J-A03044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
   :    PENNSYLVANIA
       Appellee    :
   :
           v.    :
   :
CLARENCE COLEMAN,    :
   :
       Appellant    :    No.  119 WDA 2018

Appeal from the Judgment of Sentence Entered October 16, 2017
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0007562-1987

BEFORE:  BOWES, J., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:        **FILED APRIL 12, 2019**

Clarence Coleman (Appellant) appeals from the October 16, 2017

judgment of sentence imposed following a resentencing hearing pursuant to

***Miller v. Alabama***, 567 U.S. 460 (2012),[1] and ***Commonwealth v. Batts***

(***Batts II***), 163 A.3d 410 (Pa. 2017).  We affirm.

We provide the following background.

> On the evening of November 3, 1985, the victim, Richard
> Banyots of Girard, Ohio went to the residence of [Appellant] in
> Youngstown, Ohio.[2]  A short time after Banyots arrived there,

---

* Retired Senior Judge assigned to the Superior Court.

[1] In ***Miller***, the United States Supreme Court held that a "mandatory [sentence of] life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments."  567 U.S. at 465 (internal quotations omitted).

[2] According to the testimony at trial, Banyots went to the residence in order to pay Joyce McGee to have sex with him.  However, Banyots did not have

> [Appellant] and Jerome McDavis beat and attempted to rob [Banyots]. They then transported him in the trunk of his own car to an area on the banks of the Monongahela River near Clairton, Allegheny County, Pennsylvania. There, [Appellant] shot [Banyots] three times. He then fled the scene, stopping only to throw the gun into the river. [Banyots's] body was never recovered.

*Commonwealth v. Coleman*, 643 A.2d 702 (Pa. Super. 1994) (unpublished memorandum at 1).

Appellant, who was 17 years old, was arrested and charged with Banyots's murder. On April 21, 1988, a jury convicted Appellant of first-degree murder, and he was sentenced to life in prison without parole (LWOP). On October 16, 2017, Appellant, represented by private counsel, was resentenced to 35 years to life in prison after a new sentencing hearing was conducted pursuant to the mandate of *Miller* and *Montgomery v. Louisiana*, ___ U.S. ___, 136 S.Ct. 718 (2016) (holding that *Miller* applied retroactively on collateral review).

Appellant timely filed a post-sentence motion on October 23, 2017, and on October 27, 2017, the sentencing court denied that motion without a hearing. On November 13, 2017, counsel requested leave to withdraw. That motion was granted on November 15, 2017. New counsel entered an appearance on the same day.

---

any money and the two did not engage in sex. *See* Commonwealth's Brief at 3-4 (citing Trial Court Opinion, 10/29/1993).

- 2 -

On November 17, 2017, Appellant *pro se* filed a motion to correct an illegal sentence. The sentencing court denied that motion by order dated December 19, 2017. On January 17, 2018, Appellant, through counsel, filed a notice of appeal from the December 19, 2017 order.[3]

Before we reach the issues set forth by Appellant on appeal, we must determine whether this appeal was timely filed. Where a criminal defendant timely files a post-sentence motion, a notice of appeal must be filed within 30 days from the order denying that motion. Pa.R.Crim.P. 720(A)(2)(a). In this case, Appellant a timely filed post-sentence motion, which was denied on October 27, 2017. Thus, Appellant had 30 days, until November 27, 2017, to file a timely notice of appeal. The notice of appeal in this case was filed on January 17, 2018, which was 51 days late.

However, we have excused an untimely-filed notice of appeal where there has been a breakdown in the court system. **See Commonwealth v. Patterson**, 941 A.2d 493, 499 (Pa. Super. 2007) (pointing out that despite the general rule that "an appellate court cannot extend the time for filing an appeal," this "does not affect the power of courts to grant relief in the case of fraud or breakdown in the processes of the court").

In this case, there were several breakdowns. First, in denying Appellant's post-sentence motion, a court is required to inform the defendant that he, *inter alia*, has "the right to appeal and the time limits within which

---

[3] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

the appeal must be filed." Pa.R.Crim.P. 720(B)(4)(a).  Here, the order denying

Appellant's post-sentence motion merely states "Motion is Denied." Order,

10/27/2017.  In **Patterson**, we held that a trial court's failure to comply with

Pa.R.Crim.P. 720(B)(4) constituted a breakdown in the court system which

excused an otherwise untimely-filed appeal. 970 A.2d at 499.

However, we would be remiss not to point out that the sentencing

court's failure to comply with Pa.R.Crim.P. 720 was not the only breakdown in

the court system.   On November 17, 2017, Appellant filed a *pro se* motion

for correction or modification of an illegal sentence.  At that time, Appellant

was represented by counsel.  Pursuant to Pa.R.Crim.P. 576(4),

> [i]n any case in which a defendant is represented by an attorney,
> if the defendant submits for filing a written motion, notice, or
> document that has not been signed by the defendant's attorney,
> the clerk of courts shall accept it for filing, time stamp it with the
> date of receipt and make a docket entry reflecting the date of
> receipt, and place the document in the criminal case file. A copy
> of the time stamped document shall be forwarded to the
> defendant's attorney and the attorney for the Commonwealth
> within 10 days of receipt.

Pa.R.Crim.P. 576(4).  Here, the docket does not reflect that a copy of this

motion was ever sent to counsel.[4]  Thus, due to these breakdowns in the court

---

[4] We also point out that this motion was filed after the denial of Appellant's post-sentence motion, but prior to the expiration of the period for which Appellant had to appeal his judgment of sentence.  As discussed *supra*, the clerk of courts should have forwarded it to counsel.  Moreover, because Appellant was represented by counsel, the trial court should have taken no action on it. **See Commonwealth v. Blakeney**, 108 A.3d 739, 762 (Pa. 2014) ("[N]o defendant has a constitutional right to hybrid representation, either at trial or on appeal.").  Furthermore, it was not a supplemental post-sentence motion, because the post-sentence motion had already been

- 4 -

system, we conclude that we may treat this notice of appeal as a timely-filed direct appeal from Appellant's judgment of sentence. On appeal, Appellant raises the following question for our review: "Did the trial court commit an error of law and/or abuse its discretion in not imposing a shorter term of years at the minimum end of Appellant's sentence range?" Appellant's Brief at 2.[5]

Appellant's issue implicates the discretionary aspects of his sentence. It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.

> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal [was timely-filed]; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Disalvo,*** 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted).

---

decided. ***See*** Pa.R.Crim.P. 720(B)(1)(b). It was also not a PCRA petition, because it was filed prior to Appellant's judgment of sentence becoming final. ***See Commonwealth v. Taylor***, 65 A.3d 462, 466 (Pa. Super. 2013). ("[A]ll motions filed after a judgment of sentence is final are to be construed as PCRA petitions."). Thus, there was no authority for the trial court to rule on this motion.

[5] The Commonwealth filed a brief in response. In addition, we point out that Appellant asked for and received an extension of time to file a reply brief. That brief was never filed.

Here, as discussed *supra*, Appellant timely filed a notice of appeal, and he sought reconsideration of his sentence in a timely-filed post-sentence motion. In addition, he has included a concise statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). **See** Appellant's Brief at 5-6. Therefore, we now consider whether Appellant has raised a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul,** 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Griffin,** 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

Appellant contends that his minimum sentence of 35 years in prison is "not appropriate because the trial court … improperly [failed] to consider [that] the impulsive, impetuous nature of the crime [was a] mitigating factor that would warrant a minimum sentence of fewer than 35 years." Appellant's Brief at 5. Appellant also claims that the trial court erred "by not taking into account [Appellant's] background." **Id**. at 6.

Appellant's claims are allegations that his minimum sentence is manifestly excessive because the sentencing court failed to consider mitigating factors. In that regard,

> "this Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." []***Disalvo***, 70 A.3d [at] 903 [] (internal citation omitted).

> However, "prior decisions from this Court involving whether a substantial question has been raised by claims that the sentencing court 'failed to consider' or 'failed to adequately consider' sentencing factors [have] been less than a model of clarity and consistency." ***Commonwealth v. Seagraves***, 103 A.3d 839, 842 (Pa.[ ]Super.[ ]2014) (citing [***Commonwealth v. Dodge***, 77 A.3d 1263 (Pa. Super. 2013)]). In []***Dodge***, this Court determined an appellant's claim that the sentencing court "disregarded rehabilitation and the nature and circumstances of the offense in handing down its sentence" presented a substantial question. ***Dodge***[, 77 A.3d] at 1273.

> This Court has also held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.

***Commonwealth v. Caldwell***, 117 A.3d 763, 769–70 (Pa. Super. 2015) (*en banc*) (some citations and quotation marks omitted).

Based on the above precedent, we find that Appellant has raised a substantial question, and we will review the merits of his discretionary-aspects-of-sentence claim under the following standard.

> If this Court grants appeal and reviews the sentence, the standard of review is well-settled: sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

***Commonwealth v. Malovich,*** 903 A.2d 1247, 1252–53 (Pa. Super. 2006)

(citations omitted).

> In ***Batts II***, our Supreme Court held, *inter alia*, that a lower court, in resentencing a juvenile offender convicted of first-degree murder prior to ***Miller***, may impose a minimum term-of-years sentence and a maximum sentence of life imprisonment, thus "exposing these defendants to parole eligibility upon the expiration of their minimum sentences." ***Batts II***, 163 A.3d at 439. In determining the minimum term-of-years sentence, the Court mandated that lower courts consult the sentencing requirements codified at 18 Pa.C.S. § 1102.1 for guidance. ***Id.*** at 457. Specifically for a juvenile convicted of first-degree murder pre-***Miller***, the portion of section 1102.1 that a lower court must consider is the guidelines set forth in subsection 1102.1(a). Subsection 1102.1(a)(1) provides, in relevant part, as follows.

>> **(a) First degree murder.--**A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:

>> (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

> 18 Pa.C.S. § 1102.1(a)(1).

***Commonwealth v. White***, 193 A.3d 977, 984 (Pa. Super. 2018).

In this case, because Appellant was convicted prior to June 24, 2012, the sentencing court had the discretion to sentence Appellant to a minimum term-of-years sentence of less than 35 years. In support thereof, Appellant presented the testimony of Maria Guido, L.S.W., at the sentencing hearing.

She testified that she was engaged by the court for "the purpose of providing the [c]ourt with background information to assist the [c]ourt in determining a proper resentence." N.T., 10/16/2017, at 15. She testified that she has worked specifically with juvenile offenders, and was trained by the Youth Sentencing and Re-Entry Project in Philadelphia in June of 2016. *Id*. at 16. She was qualified without objection as an expert.

> Ms. Guido testified that she based her testimony on the records from the Department of Corrections; interviews with family members; interviews with [Appellant]; letters and information from prisoners that [Appellant] has mentored in prison; and, information obtained from newspapers during the time period of the offense and conviction. She described his ongoing support system of his family and friends who would continue to support him upon his release from prison and his prospects for successful rehabilitation and integration back into society through work and continued counseling. Specifically, Ms. Guido testified that [Appellant] grew up in a very chaotic environment and that his mother became pregnant with him when she was only 14 years old. She described his father as extremely cruel and abusive to not only his wife but [Appellant]. Ms. Guido testified that [Appellant's] mother, Dorothea, described incidents where [Appellant] was hit when he was 9 months old and that she was repeatedly beat by her husband. She testified that [Appellant] was anxious as a child, was bullied in school and grew up with a stutter. She testified that [Appellant] was taught by his father that he needed to fight and be aggressive and use whatever was available as a weapon. She also testified that a very important figure in [Appellant's] and his mother's life was his aunt who passed away when he was 12 years old, which caused him significant trauma. She testified that after the death of his aunt, who was the matriarch of the family, he looked for guidance to his peers and cousins for validation and a support system. She testified that as a result he became involved in delinquent activities causing him to be arrested when he was 15 years old and placed in the juvenile system twice in Ohio and was released when he was 17 years old. He was [sent] to his father but ultimately, due to the conflict with his father, he began living with various cousins.

Regarding his incarceration, [Ms.] Guido testified that he was currently incarcerated at SCI Coal Township where he has been since 2003. She testified that in his first 15 years he struggled with adjusting to prison but since being at Coal Township he has done very well. She testified that [Appellant] works part-time and has had no recent serious or violent misconducts and participates in a number of volunteer projects and organizations. She testified that he maintains a relationship with his family, including his mother and his brother. She testified that [Appellant] has four children, two of whom have passed away. One of his children is incarcerated and he has a daughter who [*sic*] he maintains contact with. She testified that [Appellant] participates in a juvenile lifers group and is interested in helping young kids who are [at] risk [of] engaging in criminal activity.

She testified that based on her review of all of the information[, Appellant] has matured during his 30 years of incarceration and has not had a serious infraction in the last 15 years. Ms. Guido testified that [Appellant] shows significant remorse for the murder of the victim and he has a support system upon release and he would likely engage in mental health treatment to continue his progress. She testified that it is her opinion that [Appellant] has exceeded expectations for rehabilitation within the Department of Corrections. She also testified that he should be able to transition successfully into the community and be a productive citizen in society.

On cross-examination Ms. Guido acknowledged that the records from the Department of Corrections indicated that [Appellant] described his childhood as normal and reported no physical, sexual or emotional abuse. She also testified that [Appellant] acknowledged his role in the murder but denied actually shooting the victim. She testified that at the time of the murder he agreed to accept the blame under the mistaken belief that as a juvenile he would get a lesser sentence.

[Appellant] also presented the testimony of Sergeant Casey Ranck of the State Correctional facility in Coal Township where [Appellant] is currently incarcerated. Sgt. Ranck testified that he has interacted with [Appellant] for approximately 3 years and that [Appellant] is very well behaved and volunteers for activities and extra work. He testified that [Appellant] interacts well with the other inmates and also helps mentor newer inmates who are in

- 10 -

the unit. [Appellant] also offered the testimony of two other correctional officers who were present to testify at the hearing and whose testimony would be cumulative to that of Sgt. Ranck's.

[Appellant] testified by reading a statement expressing his sorrow to the victim's family, acknowledging his wrongdoing and expressing his remorse. [Appellant] testified that he had matured during his incarceration and develop[ed] to the point that he was able to share his experience with others as a learning tool in hopes of making a positive difference in the lives of others coming through the penitentiary. [Appellant] also testified that at the time of trial he was offered a sentence of 10 to 20 years and rejected the deal because it would have required him to testify against his co-defendant which he didn't want to do because he respected him and he did not want to be regarded as a snitch.

On cross examination [Appellant] denied that he was the "trigger man" but did acknowledge his involvement in the crime. [Appellant] also acknowledged that he had two other juvenile adjudications. [Appellant] also acknowledged that he had various misconducts during his incarceration and testified to the circumstances regarding those misconducts.

Trial Court Opinion, 7/17/2018, at 3-6 (citations omitted).

The trial court considered all of this testimony and offered the following in support of its decision to sentence Appellant to a minimum of 35 years of incarceration.

In this case, [Appellant] … was 17 years and 10 months old at the time of the offense on November 3, 1985. There was no specific testimony regarding his education[al] background, however, the Department of Corrections records indicate that he was "kicked out" of school in the 9th grade due to poor performance and fighting and received his GED in 2008. There was no evidence he suffered from any mental, intellectual or physical disabilities. The testimony and evidence does support a finding that [Appellant] had an abusive father [who] affected the stability of [Appellant's] home environment. The death of his aunt, who was a stable figure in his life, when [Appellant] was 12 years old … had a significant impact on him. However, according to records from the Department of Corrections, [Appellant] did

report that he had a normal childhood with no history of physical, sexual or emotional abuse.

The testimony establishes that [Appellant] had juvenile his adjudications that [led] to placement in juvenile facilities and some improvement in his development as a result of the structure that was imposed. His record of juvenile offenses, adjudications and placements reflects a level of familiarity with the criminal justice system. There were clearly negative influences on [Appellant], thereafter, when he was released at age 17, however, he was at an age that he clearly understood the nature of the crime he was involved in.

The circumstances of the killing of the victim in this case indicate[] that this was not a crime of sudden provocation or impulse and while [Appellant] denies that he was the one [who] shot the victim, his confessions contradict this assertion. His Department of Correction[s] records indicate that [Appellant] stated that he did not participate in the robbery of the victim, but that he didn't stop it, and that he got into the car and drove to Pennsylvania but that he didn't really know anything about the crime. He indicated in his testimony that he agreed to take responsibility believ[]ing he would receive a lesser sentence as a juvenile, however, even when being faced with an offer of 10 to 20 years [of incarceration] he still refused to accept the plea offer as he would be required to testify against his co-defendant. This decision, which he indicates was premised on his desire to "not come across as a snitch," demonstrates that he had the opportunity to negotiate with prosecutors prior to his conviction.

Finally, as to the possibility of [Appellant's] rehabilitation, the record reflects that he has had a number of misconducts, although most of these occurred [prior to] and including 2002. The Department of Corrections records reflect that his evaluations under "Job Performance," "Attitude and Relationships," and "Personal Characteristics" were all rated as average in 2016, which was confirmed by the testimony of Sgt. Ranck. The testimony of Ms. Guido does reflect that he has made progress in his rehabilitation and has attempted to aid other prisoners coming into the system. The testimony also establishes that he has family members or friends [who] can support him upon his release. In his testimony [Appellant] expressed remorse for his involvement[,] but acknowledged the impact on the loss of the victim's life on his family. [Appellant] expressed that he had

matured during his years of incarceration and that he has attempted to act as a mentor to some younger inmates. All of the evidence and documents concerning [Appellant] were taken into consideration pursuant to *Miller* and the direction given by the decisions of the Pennsylvania Supreme Court []regarding the imposition of an individualized sentence for [Appellant] as a juvenile offender convicted of [f]irst[-d]egree [m]urder.

Trial Court Opinion, 7/17/2018, at 11-13 (paragraphing added).

On appeal, Appellant argues that the trial court failed to focus its attention on the fact that "any incidents [of misconduct] in the last decade were technical and non-violent." Appellant's Brief at 10. Additionally, Appellant suggests the trial court did not acknowledge Sergeant Ranck's testimony that Appellant "is an asset to the prison community and does not cause any trouble." *Id*. at 11. Further, Appellant contends that the trial court should have noted that Ms. Guido "actually testified that [Appellant] has 'exceeded [] expectations concerning rehabilitation within the Department of Corrections and should be given a chance to appear before the Pennsylvania Parole Board.'" *Id*. Additionally, Appellant argues that Appellant's failing to accept the plea bargain offer prior to trial revealed that he "lacked the intellectual development and capacity to fully appreciate, understand and consider the import and consequences of his decisions." *Id*. Appellant also suggests that the trial court should have weighed more heavily the fact that Appellant "was a young man without a family and without a home." *Id*. at 12. According to Appellant, "[i]f he had a stable home, [Appellant] would not have been in the brothel where the robbery took place." *Id*. Appellant argues

that his "intention was to assist [McDavis] in robbing [] Banyots and there was no premeditation regarding murder." *Id*. at 12-13.

Reviewing the above argument in light of what the court considered at resentencing, it is apparent that the court did indeed consider all of the arguments set forth by Appellant. The trial court recognized that Appellant's age fell just below the 18-year-old cutoff set forth in *Miller*, but also considered a number of other factors in Appellant's life, including his prior involvement and knowledge of the criminal justice system and lack of family stability.

Based on the foregoing, it was within the trial court's discretion to conclude that Appellant should serve a minimum sentence of 35 years of incarceration. In fact, this new sentence would permit him to face a parole board, as Appellant indicated he wished to do, in 2022. Thus, we find the sentencing court did not abuse its discretion in fashioning Appellant's sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2019

- 14 -