J-S42041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FLOYD WILSON | : | |
| | : | |
| Appellant | : | No. 2498 EDA 2018 |

Appeal from the Judgment of Sentence Entered June 13, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002168-1975

BEFORE:   OTT, J., KUNSELMAN, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                    **FILED SEPTEMBER 05, 2019**

Appellant, Floyd Wilson, *pro se*, appeals from the aggregate judgment of sentence of 38 years to life imprisonment, with credit for time served beginning on March 25, 1995, which was imposed at his resentencing on June 13, 2018, for his jury trial convictions for murder of the first degree, criminal attempt to commit robbery, and criminal conspiracy.[1]  We affirm.

On March 25, 1975, Appellant shot and killed Glenolden Borough Police Chief Robert Sparks.  Appellant was 17 years old.[2]

The additional relevant facts and procedural history of this case have been previously, correctly, and fully set forth in:   ***Commonwealth v.***

_____

[1] 18 Pa.C.S. §§ 2502(a), 901(a), and 903(a)(1), respectively.

[2] Appellant's birthdate is May 27, 1957.

*   Retired Senior Judge assigned to the Superior Court.

*Wilson*, 402 A.2d 1027, 1028 (Pa. 1979); *Commonwealth v. Wilson*, No. 400 Philadelphia 1981, unpublished memorandum at 1-4 (Pa. Super. filed August 13, 1982); *Commonwealth v. Wilson*, No. 1628 Philadelphia 1994, unpublished memorandum at 1-3 (Pa. Super. filed November 9, 1994); *Commonwealth v. Wilson*, No. 1720 Philadelphia 1997, unpublished memorandum at 1-2 (Pa. Super. filed December 4, 1997), *aff'd*, 719 A.2d 746 (Pa. 1998); *Wilson v. Gaston*, No. 2264 C.D. 2010, unpublished memorandum at 1-2 (not paginated) (Pa. Cmwlth. filed January 28, 2011); *Wilson v. Wenerowicz*, No. 12-CV-05162, 2014 WL 1757189, at *1–*3 (E.D. Pa. May 2, 2014) (unpublished order, report, and recommendation); *Commonwealth v. Wilson*, No. 2006 EDA 2014, unpublished memorandum at 2-3 (Pa. Super. filed April 6, 2015); and Resentencing Court Opinion, filed January 25, 2019, at 1-16. Therefore, we have no reason to restate them at length herein, but, for the convenience of the reader, we will provide a brief review.

Appellant was arrested on March 26, 1975, the day after the murder. He was charged pursuant to three separate dockets: the current action, Docket Number CP-23-CR-0002168-1975 ("No. 2168"), and two unrelated[3]

---

[3] The underlying facts of the robbery actions are unrelated both to the current appeal and to each other.

robbery cases, Docket Number CP-23-CR-0005121-1975 ("No. 5121")[4] and

Docket Number CP-23-CR-0005122-1975 ("No. 5122")[5] (hereinafter the two

robbery actions are collectively known as "Nos. 5121 & 5122").

In January 1976, Appellant was tried and found guilty of the above-enumerated crimes at No. 2168.  On November 15, 1976, the trial court sentenced Appellant to a then-mandatory term of life without the possibility of parole ("LWOP") for the murder conviction, with an additional aggregate, consecutive 15 to 30 years of confinement for the other charges.  Appellant appealed.

During the pendency of his direct appeal at No. 2168, Appellant was convicted at Nos. 5121 & 5122.  On August 10, 1976, Appellant was sentenced at No. 5121 to 10 to 20 years of confinement.  On June 3, 1977,

---

[4] For more detail about No. 5121, **see Commonwealth v. Wilson**, 392 A.2d 769 (Pa. Super. 1978).  According to this decision, Appellant was arrested at No. 5121 on April 8, 1975—13 days after his arrest for No. 2168. **Id.** at 770.  Nothing in the record indicates Appellant's date of arrest for No. 5122, but, given the docket number, it was presumably the same day as or after No. 5122.

Thus, Appellant should have received credit for 13 days of time served on No. 2168 from March 26, 1975, to April 8, 1975.  However, Appellant's sentence on No. 5121 was shortened by 13 days, ending in March 2015, instead of April 2015.  Therefore, the 13 days over at No. 2168 and the 13 days under at No. 5121 cancel out each other, and Appellant suffers no loss.

[5] For more detail about No. 5122, **see Commonwealth v. Wilson**, 390 A.2d 847 (Pa. Super. 1978), **Wilson v. Patton**, 541 F.Supp. 818 (E.D. Pa. 1982) (memorandum), *aff'd*, 772 F.2d 736 (3d Cir. 1983), and **Commonwealth v. Wilson**, No. 1388 Philadelphia 1985, unpublished memorandum (Pa. Super. filed July 18, 1985).

Appellant was sentenced at No. 5122 to 10 to 20 years of confinement "to run consecutively with any sentence he was then serving." *Commonwealth v. Wilson*, No. 1388 Philadelphia 1985, unpublished memorandum at 5 (Pa. Super. filed July 18, 1985). Thus, for the two robberies, Appellant was to serve an aggregate sentence of 20 to 40 years of confinement.

On July 6, 1979, at No. 2168, on direct appeal, Appellant's conviction and judgment of sentence were vacated in their entirety by the Supreme Court of Pennsylvania, and Appellant was granted a new trial. *Wilson*, 402 A.2d at 1028-30 (reference in Commonwealth's opening statement to Appellant's "incriminating [oral] statements following his arrest" and to his "written statement[,]" neither of which were "introduced into evidence or referred to again during trial" thereby denying Appellant "the opportunity of making any inquiry as to the confession, its contents or circumstances[,]" caused an unfair trial, requiring reversal and a new trial).

A second jury trial commenced at No. 2168 on October 29, 1979. On November 1, 1979, Appellant was again found guilty of the aforementioned charges. On February 2, 1981, he was again sentenced to a then-mandatory term of LWOP for the murder conviction, with an additional aggregate, consecutive 15 to 30 years of confinement for the other charges.

> Although it is clearly shown from a review of the February 2, 1981, hearing transcript [Appellant] was sentenced to then mandatory life imprisonment, absent parole possibility,[51] followed in the aggregate by ten (10) through twenty (20) years

- 4 -

incarceration, these same case notes are wholly devoid as to the interplay between this past and now vacated[52] at bar sentence (February 2, 1981) and those previously entered and then being served under the dockets, ***Commonwealth v. Wilson***, Nos. 5121[ &] 5122[]. N.T. 2/2/81. ***See also Commonwealth v. Wilson***, No. 5121[] - N.T. 8/10/76, pp. 9-10 and ***Commonwealth v. Wilson***, No. 5122[] - N.T. 6/3/77, pp. 4-5.

[51] 18 Pa.C.S. §1102(a).

[52] ***See*** Order and Supporting Memorandum dated May 23, 2018.

Resentencing Court Opinion, filed January 25, 2019, at 28 & 78 nn.51-52. Appellant filed a direct appeal, and this Court affirmed his judgment of sentence. ***Wilson***, No. 400 Philadelphia 1981.

On March 18, 2016, at No. 2168, Appellant filed a petition pursuant to the Post Conviction Relief Act ("PCRA").[6] On May 23, 2018, the PCRA court granted Appellant's petition and vacated his sentence at No. 2168 in its entirety.

On April 18, 2018, the Commonwealth filed a notice of intent to seek imposition of an LWOP sentence. On May 23, May 30, and June 13, 2018, resentencing hearings were held. During these hearings, the chief sentencing computation supervisor from the Pennsylvania Department of Corrections testified that Appellant's time served in confinement from March 26, 1975, to March 26, 2015, should be attributed solely to his sentences at Nos. 5121 & 5122 and that the calculation of Appellant's credit

---

[6] 42 Pa.C.S. §§ 9541–9546.

- 5 -

for time served at No. 2168 should begin on March 27, 2015, a sum total of approximately three years. N.T., 5/23/2018, at 20-22, 30-32.

At the conclusion of the hearing on June 13, 2018, the resentencing court made the following findings on the record:

The age-related characteristics of [Appellant] at the time of Chief Sparks' murder include among other things the mental capacity commensurate with his then age, 17 years, 9 months and 27 days. . . . His maturity level and the evidence presented again appears to have been consistent with his then age of almost 18 years. . . . There is no evidence he suffered from a traumatic childhood and/or familial dysfunction.

Perhaps as a byproduct of his gang involvement, [Appellant] when a teen was a substance abuser including at the time he murdered Chief Sparks although there is no evidence he was then under the influence of any intoxicants. While his offenses do not suggest the height of criminal sophistication the murder of Chief Sparks did entail some measure of planning. . . .

[Appellant] prior to the murder of Chief Sparks had modest Juvenile Court contact which resulted in a consent decree, a loose form of oversight and certainly not accompanied by any appreciable rehabilitative interventions. Within the weeks just prior to his killing of Chief Sparks, [Appellant] also perpetrated a home invasion armed robbery, as well as the armed robbery of another local pharmacy. However, these prosecutions did not commence until the time of the murder case and obviously as such did not allow for any material rehabilitative efforts. The proffered institutional reports largely from the Pennsylvania Department of Corrections presents circumstances both favorable to the prosecution and defense. By way of summary these records show [Appellant] at the outset of his incarceration was the subject of many disciplinary infractions including a number of appreciable if not notably significant institutional violations with such problematic behaviors continuing from the mid-1970's through the early to mid-2000's. He has been infraction-free for at least the past 13 years.

N.T., 6/13/2018, at 10-12. The court then resentenced Appellant for the murder conviction to 38 years to life imprisonment, with credit for time

- 6 -

served commencing on March 25, 1995. Certificate of Imposition of Judgment of Sentence, 6/13/2018.[7]

On August 1, 2018, the resentencing court denied Appellant's motion for reconsideration of sentence. On August 16, 2018, Appellant filed a motion to proceed *pro se*. On August 17, 2018, Appellant's counsel filed this timely direct appeal. On September 27, 2018, the resentencing court conducted a ***Grazier***[8] hearing, and the court granted Appellant's motion to proceed *pro se*. Appellant *pro se* filed his statement of errors complained of on appeal on October 12, 2018.[9]

Appellant now presents the following issues for our review:

1. Did the [resentencing] court commit legal error by confiscating twenty (20) years of time credit that must be applied to [A]ppellant's homicide sentence?

2. Did the [resentencing] court commit legal error by altering another sentencing court's sentence from a separate and unrelated case?

(a) Coordinate jurisdiction rule violated.

(b) ***Commonwealth v. Goldhammer*** not controlling.

_____

[7] For the attempt and conspiracy convictions, Appellant received sentences of 10 to 20 years of confinement each, to be served concurrently to his 38 years to life sentence and to each other. Certificate of Imposition of Judgment of Sentence, 6/13/2018. As these sentences also commenced on March 25, 1995, they were completed on March 25, 2015, and are not at issue in this appeal.

[8] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

[9] The resentencing court entered its opinion on January 25, 2019.

- 7 -

       (c)      PCRA statute violation.

       (d)      ***Commonwealth v. Foust*** distinguished.

3.    Is the [resentencing] court's aggregate sentence of fifty-eight (58) years to life contrary to [f]ederal law, because the court failed to apply United States Supreme Court holdings across the sentencing scheme?

4.    Did the [resentencing] court impose an unconstitutional *de facto* [LWOP] sentence?

5.    Did the [resentencing] court deny [A]ppellant due process of law resulting from an appearance of bias?

Appellant's Brief at 3.

Appellant contends in his first and second appellate claims that the trial court "committed error by confiscating twenty (20) years of time credit attributable to the sentence" and "altering another court's sentence from a separate and unrelated case."  Appellant's Brief at 8, 13.  Appellant continues that "[t]he court's resentence violates a sentencing norm and a rule of law—coordinate jurisdiction rule--whereby judges of equal jurisdiction sitting in the same case should not overrule each other's decisions."  ***Id.*** at 14.

Appellant thereby appears to argue that the sentence at No. 2168 that he received upon resentencing in 2018 should have been calculated to run concurrently to the entirety of his sentences at Nos. 5121 & 5122.  ***Id.*** at 10.  That is to say, Appellant seems to suggest that his 38-year minimum should be computed from 1975, not 1995, and that he thus should have been immediately paroled.  ***Id.*** at 11.

- 8 -

"We have stated that the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court." **Commonwealth v. Zirkle**, 107 A.3d 127, 133 (Pa. Super. 2014).

Our standard of review for challenges to the discretionary aspects of sentencing is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Lekka**, 210 A.3d 343, 350 (Pa. Super. 2019) (citation omitted) (some formatting).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Manivannan**, 186 A.3d 472, 489 (Pa. Super. 2018) (quotation marks and some citations omitted), *reargument denied* (July 7, 2018).

In the current case, Appellant filed a timely notice of appeal and preserved his issue in a post-sentence motion. However, Appellant's brief to this Court does not contain a separate section with a concise statement of

- 9 -

the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f); Appellant has thus waived his challenge to the discretionary aspects of his sentence. *See Manivannan*, 186 A.3d at 489.

Assuming Appellant had preserved this challenge, his claims are belied by the record. Appellant's sentences at Nos. 5121 & 5122 were imposed prior to his 1981 sentencing for No. 2168. Thus, the sentencing schemes devised by the sentencing courts for Nos. 5121 & 5122 could not have been affected by his sentence in No. 2186.[10] Therefore, the sentencing schemes

---

[10] This Court has previously rejected a similar argument by Appellant in *Wilson*, No. 1388 Philadelphia 1985, unpublished memorandum at 5-6:

> At the time of sentencing [at No. 5122], [A]ppellant was serving a life term for homicide and an additional term for [robbery]. Subsequently, [A]ppellant's homicide conviction was overturned. He was retried and again convicted and sentenced to life imprisonment.
>
> Appellant first argues that his sentence for the current robbery [at No. 5122] was made to run consecutive to a sentence which had not yet been imposed. Clearly, error is committed when a defendant is sentenced to serve a term of imprisonment to run consecutive to a judgment of sentence which is yet to be imposed. *Commonwealth v. Holz*, 483 Pa. 405, 397 A.2d 407 (1979). Here, however, a sentence of life imprisonment had already been imposed before the court entered the consecutive sentence. Unlike the situation in *Holz*, *supra*, where one sentenced was to run consecutive with another sentence which was soon to be imposed upon a convicted defendant, here, the trial judge was not acting without knowledge of the precise sentence given for the other charges. There exists no concern that the judge's determination was based on any "lack of knowledge." *Compare Holz*, *supra* at 408, 397 A.2d at 408. The fact [A]ppellant's sentence for life imprisonment was later

*(Footnote Continued Next Page)*

of Nos. 5121 & 5122 could not have been "altered" by resentencing Appellant at No. 2186. **See** Appellant's Brief at 13. We further note that Appellant had completed his sentences at Nos. 5121 & 5122 by 2015; hence, by the time of his 2018 resentencing at No. 2168, the sentences at Nos. 5121 & 5122 no longer existed to be "altered."

Additionally, the Supreme Court of Pennsylvania decision from 1979 reversed the sentence at No. 2168 from November 1976 in its entirety, **Wilson**, 402 A.2d at 1030, and the order dated May 23, 2018, granting PCRA relief vacated Appellant's sentence at No. 2168 from February 1981 in its entirety. Thus, it is as if Appellant's sentencing in November 1976 and in February 1981 had never occurred. **See Commonwealth v. Serrano**, 150 A.3d 470, 473 (Pa. Super. 2016) ("When a sentence is vacated and the case is remanded to the sentencing court for resentencing, the sentencing judge should start afresh." (citation omitted)). We acknowledge that the 1981 sentencing at No. 2168 never specified whether Appellant's sentence was to run concurrently or consecutively to his sentence at Nos. 5121 & 5122. As the resentencing court noted:

> Such silence [as to the interplay between the sentences at No. 2168 and Nos. 5121 & 5122] when this sentence [at No. 2168] (February 1981) was imposed is certainly not unexpected given that [Appellant] at the time had not only previously been

_(Footnote Continued)_ ———————————

> vacated is now irrelevant. Thus, we conclude that the consecutive sentence imposed for [A]ppellant's robbery conviction is lawful.

- 11 -

sentenced in the two (2) other matters (Nos. 5121[ &] 5122[]) to two (2), consecutive terms of ten (10) to twenty (20) years incarceration, but he had just then been sentenced to a mandated period of life imprisonment,[53] without parole possibility. Thus, at the time of his 1981 sentencing there was simply no good cause for that court to meaningfully consider whether the above-captioned matter's (No. 2168[]) sentence was to run consecutively or concurrently to those of the other two (2), unrelated, armed robbery[54] cases (Nos. 5121[ &] 5122[]). *See* N.T. 2/2/81; *Commonwealth v. Wilson*, No. 5121[] - N.T. 8/10/76, pp. 9-12. *See also Commonwealth v. Wilson*, No. 5121[] - N.T. 12/15/75; 12/16/75; and 12/17/75, pp. 209-13; Superior Court No. 2376 October Term 1976, Memorandum Opinion dated October 20, 1978, p. 2; *Commonwealth v. Wilson*, No. 5122[] - N.T. 6/3/77, pp. 4-5. *See also Commonwealth v. Wilson*, No. 5122[] - Trial Court Opinion dated June 27, 1985, p. 3.

> [53] 18 Pa.C.S. §1102(a).

> [54] 18 Pa.C.S. §3701.

Resentencing Court Opinion, filed January 25, 2019, at 28 & 78 nn.53-54. We further recognize that, in the absence of such information, sentences from different dockets are assumed to run concurrently. *Commonwealth v. Fisher*, 703 A.2d 714, 716 n.3 (Pa. Super. 1997) (citing 42 Pa.C.S. § 9757; then-Pa.R.Crim.P. 1406, now-Pa.R.Crim.P. 705; *Commonwealth ex. rel. Woods v. Howard*, 378 A.2d 370 (Pa. Super. 1977)) ("if the sentencing court does not indicate that a new sentence is consecutive to a prior sentence, it is deemed to run concurrent"). However, this assumption is now immaterial, because that 1981 judgment of sentence was thrown out, leaving the sentencing court in 2018 a clean slate to fashion whatever sentence it deemed appropriate, including whether credit for time served sentence was to run concurrently or consecutively to Nos. 5121 & 5122.

In fact, the resentencing court could have chosen to run Appellant's sentence at No. 2168 entirely consecutively to his sentences at Nos. 5121 & 5122, meaning that his sentence at No. 2168 could have not begun running until the full 40 years for Nos. 5121 & 5122 had finished. In other words, Appellant was not automatically entitled to receive double credit. ***See, e.g.***, ***Commonwealth v. Richard***, 150 A.3d 504, 521 (Pa. Super. 2016) (credit is not given for a commitment by reason of a separate and distinct offense); ***Commonwealth v. Clark***, 885 A.2d 1030, 1034 (Pa. Super. 2005) (same; crediting a sentence with time attributable to an unrelated charge was generally prohibited); ***Commonwealth v. Schartner***, 323 A.2d 237, 238 (Pa. Super. 1974) ("no credit is to be given a defendant for time spent in custody on another offense"). The calculation of Appellant's sentence of 38 years to life at No. 2168 theoretically could have begun in 2015, as the Department of Corrections suggested, N.T., 5/23/2018, at 20-22, 30-32, rather than in 1995. Instead, the resentencing court chose to be charitable to Appellant and to allow a portion of his sentence at No. 2168 to coincide with half of his time served at Nos. 5121 & 5122, like the overlapping portions of a Venn diagram.

Therefore, 20 years were not "confiscate[ed]" by the resentencing court, as Appellant maintains, Appellant's Brief at 8 – they were applied to his appropriate sentence at Nos. 5121 & 5122. Likewise, Appellant's new sentence in the instant action did not "alter[,]" "overrule[,]" or otherwise

affect his sentence at Nos. 5121 & 5122. **See id.** at 13-14. Thus, had Appellant's first two challenges raised on appeal been properly preserved, we would still conclude that they are meritless.[11]

In his next two issue on appeal, Appellant challenges the legality of his sentence. "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." **Lekka**, 210 A.3d at 355 (citation omitted).

Appellant states that the resentencing court's "sentencing scheme violates" **Commonwealth v. Batts**, 163 A.3d 410 (Pa. 2017) [hereinafter **Batts II**][12] (citing **Graham v. Florida**, 560 U.S. 48 (2010)), **Miller v. Alabama**, 567 U.S. 460 (2012), and **Montgomery v. Louisiana**, 136 S.Ct. 718 (2016). Appellant's Brief at 18, 20. He continues that the courts at

---

[11] We do, however, agree with Appellant that **Commonwealth v. Goldhammer,** 517 A.2d 1280 (Pa. 1986), is inapplicable, because that case held that, when a disposition by an appellate court alters the sentencing scheme, the entire sentence should be vacated, and the matter remanded for resentencing. In the instant appeal, no appellate court altered his sentencing scheme, and, as explained above, the resentencing court did not alter Appellant's sentences in Nos. 5121 & 5122. **See also Commonwealth v. Deshong**, 850 A.2d 712, 714 (Pa. Super. 2004); **Commonwealth v. Farone,** 808 A.2d 580 (Pa. Super. 2002).

**Commonwealth v. Foust**, 180 A.3d 416 (Pa. Super. 2018), will be discussed in more detail, below, pursuant to Appellant's fourth claim raised on appeal, as we believe that it is more applicable to that issue than Appellant's first two questions raised on appeal.

[12] **Commonwealth v. Batts**, 66 A.3d 286 (Pa. 2013), is commonly referred to as **Batts I**, and we prefer to maintain a consistent nomenclature.

Nos. 5121 & 5122 "tempered th[ose] sentences with benign discretion . . .

The resentencing court overruled and rejected deference to those courts."

*Id.* at 19.

> In ***Miller***, the Supreme Court listed various factors that a court must consider when imposing a [LWOP] sentence on a juvenile offender including the "hallmark features" of youth, such as "immaturity, impetuosity, and failure to appreciate risks and consequences." [567 U.S.] at 476-78, 132 S.Ct. 2455. This Court summarized the ***Miller*** factors in ***Commonwealth v. Knox***, 50 A.3d 732 (Pa. Super. 2012), which were subsequently adopted by our Supreme Court in ***Commonwealth v. Batts***, 620 Pa. 115, 66 A.3d 286 (2013) (***Batts I***) . . .
>
> The [Supreme] Court [of Pennsylvania] stated that in cases where the Commonwealth requests a sentence of life imprisonment without parole for a juvenile offender, it . . . must prove beyond a reasonable doubt that the offender "exhibits such irretrievable depravity that rehabilitation is impossible." ***Batts II***, 163 A.3d at 455 (emphasis omitted) (quoting ***Montgomery***, 136 S.Ct. at 733). As the Court explained, the Commonwealth may seek to meet its burden by producing evidence relevant to the ***Miller*** and Section 1102.1(d) factors, and the court must examine each of the ***Miller*** and Section 1102.1(d) factors prior to weighing whether to sentence a juvenile offender to life without parole. *Id.* at 455 & n.23.

***Lekka***, 210 A.3d at 347, 355. Section 1102.1(d) of the Crimes Code, 18

Pa.C.S. § 1102.1(d), was enacted after the ***Miller*** decision to provide that

age-related factors be taken into account. Section 1102.1(d) provides:

> In determining whether to impose a sentence of life without parole . . ., the court shall consider and make findings on the record regarding the following:
> . . .
> (7) Age-related characteristics of the defendant, including:
>
> > (i) Age.
> >
> > (ii) Mental capacity.
> >
> > (iii) Maturity.

- 15 -

(iv) The degree of criminal sophistication exhibited by the defendant.

(v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

(vi) Probation or institutional reports.

(vii) Other relevant factors.

18 Pa.C.S. § 1102.1(d).

In the current action, the resentencing court considered and made findings on the record regarding the **Miller** and Section 1102.1(d) factors.[13] Specifically, the resentencing court stated on the record that it considered Appellant's age at the time of the crime – 17 years, 9 months, and 27 days – and that his "mental capacity" and "maturity level" were "commensurate with his then age[.]"  N.T., 6/13/2018, at 10.  **Compare id.**, **with Lekka**, 210 A.3d at 347 (quoting **Miller**, 567 U.S. at 477) ("hallmark features" of youth include "immaturity"), **and** 18 Pa.C.S. § 1102.1(d)(7)(i)-(iii). Additionally, the resentencing court found that Appellant's "offenses do not suggest the height of criminal sophistication" but "did entail some measure of planning."  N.T., 6/13/2018, at 11.  **Compare id.**, **with Lekka**, 210 A.3d

---

[13] Although the resentencing court did not impose a LWOP sentence, since the Commonwealth sought such a sentence, as evidenced by its notice of intent to seek imposition of LWOP sentence dated April 18, 2018, the resentencing court had to consider the **Miller** and Section 1102.1(d) factors. **See Lekka**, 210 A.3d at 357 (citing **Commonwealth v. White**, 193 A.3d 977, 983 (Pa. Super. 2018), *appeal denied*, No. 304 WAL 2018, 2019 WL 2498272 (Pa. June 17, 2019)).

at 347 (quoting **Miller**, 567 U.S. at 477) ("hallmark features" of youth include "impetuosity"), **and** 18 Pa.C.S. § 1102.1(d)(7)(iv). The resentencing court also took into account that, prior to committing this murder, Appellant had never had "any appreciable rehabilitative interventions" by the court system. N.T., 6/13/2018, at 11. **Compare id.**, **with** 18 Pa.C.S. § 1102.1(d)(7)(v). The resentencing court further deliberated upon "[t]he proffered institutional reports largely from the Pennsylvania Department of Corrections present[ing] circumstances both favorable to the prosecution and defense." N.T., 6/13/2018, at 12. **Compare id.**, **with** 18 Pa.C.S. § 1102.1(d)(7)(vi). Finally, the resentencing court reflected upon Appellant's history of "gang involvement" and "substance abuse[,]" as well as his family and home environment. N.T., 6/13/2018, at 10-11. **Compare id.**, **with** 18 Pa.C.S. § 1102.1(d)(7)(vii) ("Other relevant factors"). Thus, since the resentencing court considered and made findings on the record about the **Miller** and Section 1102.1(d) factors, Appellant's sentence did not violate the requirements of **Batts II**, **Miller**, and **Montgomery**, and Appellant's third appellate challenge is meritless. **See** Appellant's Brief at 18-20.

Appellant next insists that the resentencing court "imposed an unconstitutional de facto [LWOP] sentence." Appellant's Brief at 20.

Appellant is correct that, pursuant to **Miller** and **Montgomery**, "a trial court may not impose a term-of-years sentence on a juvenile convicted of

- 17 -

homicide if that term-of-years sentence equates to a *de facto* [LWOP] sentence unless it finds, beyond a reasonable doubt, that the juvenile is incapable of rehabilitation." *Lekka*, 210 A.3d at 357 (citation and internal brackets omitted). In *Lekka*, we phrased the question of whether a sentence constitutes a *de facto* LWOP sentence as whether a defendant has a "meaningful chance of survival until he completes his . . . minimum sentence to enjoy his time at liberty at parole, should he be granted release." *Id.* at 358.[14]

An analogous claim of a *de facto* LWOP sentence was raised by the appellant in *Commonwealth v. Foust*, 180 A.3d 416, 420, 441 (Pa. Super. 2018), wherein an appellant who was incarcerated at age 17 was sentenced to a minimum of 60 years of confinement and would not be paroled until he was 77 years old. This Court concluded that this sentence was not a *de facto* LWOP sentence, because "[a]lthough he may not live this long, he has a chance of being released into society." *Id.* at 441.

When considering what would constitute a *de facto* LWOP sentence, this Court wrote in *Foust*: "There are certain term-of-years sentences

---

[14] In *Lekka*, 210 A.3d at 346-47, the appellant was 17 years old when he committed murder of the first degree, as was Appellant. The appellant in *Lekka* "argue[d] that his sentence of 45 years to life imprisonment, with credit for time served from the date he originally entered the correctional system, constitutes a *de facto* [LWOP] sentence." *Id.* at 357. This Court disagreed.

which clearly constitute *de facto* LWOP sentences.  For example, a 150–year sentence is a *de facto* LWOP sentence." ***Id.*** at 438.

> [T]hough it expressly declined to do so, the ***Foust*** Court seemed to suggest some sort of meaningful-opportunity-for-release standard by declaring that a 150–years–to–life sentence constitutes a *de facto* LWOP sentence. . . . There simply is no comparison between the opportunity to be paroled at 60 years of age and 100+ years of age.  The difference is, quite literally, a lifetime.

***Commonwealth v. White***, 193 A.3d 977, 986 (Pa. Super. 2018) (citation omitted), *appeal denied*, No. 304 WAL 2018, 2019 WL 2498272 (Pa. June 17, 2019).  To wit, a sentence where no one has any possibility of living long enough to complete the sentence is a *de facto* LWOP sentence.

Appellant, who like the appellant in ***Foust***, 180 A.3d at 420, 441, has been incarcerated since he was 17 years old, will serve an aggregate minimum of 58 years across his three actions, and, if he is paroled at that time, he will be 75 years old.  Both Appellant's total time in confinement and his age at the time of his release are less than the corresponding numbers of the appellant in ***Foust*** – *i.e.*, 58 years < 60 years; 75 years < 77 years.  As this Court did not find the sentence in ***Foust*** to be a *de facto* LWOP sentence, we similarly conclude that Appellant's lesser sentence cannot be considered a *de facto* LWOP sentence.  ***Id.*** at 441.

Although there can be no assurance that Appellant will live to be 75 years old, it is still feasible that he may, unlike ***Foust***'s hypothetical of a 150-year sentence.  ***Id.*** at 438.  Appellant thus has a meaningful

opportunity for release, **White**, 193 A.3d at 986, and "meaningful chance of survival until he completes his . . . minimum sentence to enjoy his time at liberty at parole, should he be granted release." **Lekka**, 210 A.3d at 358. Hence, Appellant's claim that his term-of-years minimum sentences constitute a *de facto* LWOP sentence is without merit.

Appellant's final appellate issue asserts that the resentencing court was biased, because a deputy sheriff working in the courtroom during the proceedings was a former chief of police of Glenolden Borough, just as the victim had been. We find this claim to be waived, because Appellant failed to raise this claim before the resentencing court. *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[15]

Based on the foregoing, Appellant is not entitled to relief. We affirm the judgment of sentence imposed at his resentencing on June 13, 2018.

Judgment of sentence affirmed.

---

[15] To the extent that Appellant alleges that this claim was raised in an attachment to his "Motion for Modification of the Record" filed on August 16, 2018, no such attachment appears in the certified record. "Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials" – in this case, Appellant. Note to Pa.R.A.P. 1921.

Assuming it were in the record, Appellant filed this motion more than 10 days after his resentencing, and it was thereby untimely. *See* Pa.R.Crim.P. 720(A)(1) ("a written post-sentence motion shall be filed no later than 10 days after imposition of sentence").

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/5/19