J-A07044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON LITES | : | |
| | : | |
| Appellant | : | No. 447 EDA 2022 |

Appeal from the Judgment of Sentence Entered December 20, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0000302-2016

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED JULY 13, 2023**

Brandon Lites (Appellant) appeals from the December 20, 2021, judgment of sentence[1] entered by the Delaware County Court of Common Pleas after this Court vacated the trial court's original sentence as illegal.[2]  In December of 2017, a jury convicted Appellant of one count each of burglary, attempted rape (by forcible compulsion), indecent assault (by forcible

_____

[1] Appellant purports to appeal from the "[o]rder entered in this matter on the 7th of January, 2022 . . . denying the [m]otion for [r]econsideration of [s]entence."  Appellant's Notice of Appeal, 2/2/22.  However, the appeal properly lies from the judgment of sentence imposed on December 20, 2021. ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) ("In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions.").  The caption has been corrected accordingly.

[2] ***See Commonwealth v. Lites***, 234 A.3d 806 (Pa. Super. 2020).

compulsion), criminal trespass (of an occupied structure), and simple assault.[3]

Upon remand for resentencing, the trial court imposed an aggregate sentence

of 184 to 368 months' imprisonment. Appellant now raises challenges to the

discretionary aspects and legality of his sentence. Based on the following, we

affirm.

The trial court summarized the underlying facts and procedural history

as follows as follows:

> On June 24, 2014[,] Appellant entered the apartment of a complete stranger, [the] eighty-one year old victim. . . . Appellant threw her on the ground, smothered her with a pillow, exposed his penis and rubbed it on her, touched her in the vaginal area, and fractured her collarbone. Appellant ejaculated on the victim's nightgown and thigh and left the apartment after the victim bit Appellant's finger and screamed. Eventually, Appellant was identified as the perpetrator of the crimes following a C.O.D.I.S.[4] search and comparison with Appellant's DNA. Appellant was arrested and charged with several crimes including burglary and criminal trespass.
>
> On December 20, 2017, following a jury trial, Appellant was convicted of [the above-mentioned crimes]. On February 12, 2018[,] th[e trial] court, having determined Appellant's 1994 burglary conviction upgraded the convictions to require imposition of mandatory minimum sentences, imposed judgment of sentence to an aggregate period of confinement in a [s]tate [c]orrectional [i]nstitution for a term of not less than 20 years and not more than 40 years.
>
> Following an appeal from the February 12, 2018[, j]udgment of [s]entence imposed in the case, on June 29,

_____

[3] **See** 18 Pa.C.S. §§ 3502(a)(1), 901(a)/3121(a)(1), 3126(a)(2), 3503(a)(1)(i), and 2701(a)(1), respectively.

[4] C.O.D.I.S. is the acronym for Combined DNA Index System Description.

2020[, the] Superior Court decided it was "constrained to hold that burglary (as defined by former Section 3502(a)) is not equivalent to burglary (as defined by current Section 3502(a)(1))" and affirmed the conviction, vacated the judgment of sentence, and remanded for resentencing. [**Lites**, 234 A.3d at 819-20].[1]

_____

[1] As a result of the June 29, 2020[,] Superior Court decision remanding the case for resentencing, on July 14, 2020[, the trial c] ourt scheduled a status hearing to take place on August 25, 2020. At the August 25, 2020[,] status hearing, the case was scheduled for the resentencing hearing to be held on October 26, 2020. On October 8, 2020, upon consideration of Appellant's request to continue the resentencing hearing, th[e] court rescheduled the resentencing to be held on December 22, 2020. During this time, th[e] court became unavailable due to complications associated with COVID-19 and on December 8, 2020[,] counsel for the parties requested the date of the resentencing be postponed until th[e] court became available. On November 10, 2021[,] the resentencing hearing was scheduled for December 20, 2021.

_____

On December 20, 2021[,] at the resentencing hearing[,] th[e] court imposed judgment of sentence to an aggregate period of confinement in a [s]tate [c]orrectional [i]nstitution for a term of not less than 184 months and not more than 368 months (no mandatory minimum sentences):

for the Burglary ([first-degree felony]) conviction, . . . a minimum term of 60 months to a maximum term of 120 months;

for the Criminal Attempt-Rape by Forcible Compulsion ([first-degree felony]) conviction, . . . a minimum term of 90 months to a maximum term of 180 months, consecutive to the judgment of sentence imposed for the Burglary conviction;

for the Indecent Assault-Forcible Compulsion ([first-degree misdemeanor]) conviction, . . . a minimum term of 18 months to a maximum term of 36 months, consecutive to

the judgment of sentence imposed for the Criminal Attempt-Rape by Forcible Compulsion conviction;

for the Criminal Trespass ([third-degree felony]) conviction, . . . a minimum term of 16 months to a maximum term of 32 months, consecutive to the judgment of sentence imposed for the Indecent Assault-Forcible Compulsion conviction;

for the Simple Assault ([first-degree misdemeanor]) conviction, . . . a minimum term of 12 months to a maximum term of 24 months, concurrent with the judgment of sentence imposed for the [Criminal Attempt-Rape] by Forcible Compulsion conviction.[2]

_____

[2] Additionally, Appellant: was found not [Recidivism Risk Reduction Incentive (RRRI)] or Boot Camp eligible; was sentenced to pay $5,245.99 restitution; was ordered to have no contact with the Victim in this case; was sentenced to complete and follow the recommendations of [Court Reporting Network (CRN)]/Safe Driving Classes, Substance Abuse Evaluation, Psychiatric Evaluation, Psychological Evaluation, and Psychosexual Evaluation; was required to comply with Megan's Law Registration-Tier 3,[5] and was ordered to be given credit for any completed conditions; and was ordered to be credited for the time already served in the case from October 24, 2015 through the date of resentencing on December 20, 2021.

_____

On December 29, 2021[,] Appellant filed post sentence motions. On January 7, 2022[,] the motions were denied. On February 2, 2022[,] Appellant filed a notice of appeal. On February 18, 2022[,] th[e trial c]ourt ordered Appellant to file a

_____

[5] In its opinion and at the December 2021 sentencing hearing, the trial court referred to the sexual offenders registration statute as Megan's Law. In 2012, Megan's Law was replaced by the Pennsylvania Sexual Offenders Registration and Notification Act (SORNA). *See* 42 Pa.C.S. §§ 9799.10 to 9799.75.

[c]oncise [s]tatement of [m]atters [c]omplained of on [a]ppeal under Pa.R.A.P. 1925(b).

On February 18, 2022, counsel for Appellant advised he was filing an application to withdraw in [the] Superior Court. On March 10, 2022[,] th[e trial] court entered an order enlarging the time period for filing the [Rule] 1925(b) statement to [21] days following appointment of appellate counsel. On April 8, 2022[, the] Superior Court granted the application, and on April 28, 2022, . . . th[e trial] court appointed new counsel to represent Appellant for the appeal. On May 18, 2022, new counsel filed a request to have the time period for filing the [Rule] 1925(b) statement enlarged for a period of 21 days following receipt of the [n]otes of [t]estimony from the proceedings in this case. On August 4, 2022[,] Appellant filed the [concise statement].

Trial Ct. Op., 9/6/22, at 1-4 (paragraph breaks added).

Appellant now raises the following issues for our review:

1. Whether the aggregate sentence of 184 to 368 months is an abuse of discretion, as it is unduly harsh and manifestly excessive, imposed as it was based entirely on the serious nature of the crime, without regard to mitigating evidence presented by [ ] Appellant?

2. Whether the crimes of Burglary and Criminal Trespass merge for purposes of sentencing?

Appellant's Brief at 5.

Appellant first alleges that his aggregate sentence was an abuse of the trial court's discretion as it was manifestly excessive. *See* Appellant's Brief at 16. Specifically, he complains his sentence "contravenes" Section 9721(b) of the Sentencing Code based on the following:[6]

---

[6] *See* 42 Pa.C.S. § 9721(b).

[T]he sentence is overly harsh and manifestly excessive, given the nature of the crime and the length of the sentence, where [Appellant] was [50] years of age at the time of sentencing, and the sentence will amount to a life sentence, where the sentence was imposed based on the serious nature of the crime alone without regard to the rehabilitative needs of [Appellant], and without regard to mitigating circumstances, including [Appellant]'s support in the community, the fact that [his] prior convictions are old, the offenses in [this] matter were committed during a single incident, the behavior that constituted the offenses was aberrant and would not be repeated, [Appellant] made significant steps towards rehabilitation while confined in [this] matter, including constant and regular communication with a pastor, becoming a deacon in training and engaging in teaching and mentoring other prisoners, and [Appellant]'s untreated substance abuse and mental health issues.

*Id.* at 16-17.

Appellant further asserts that although the trial court was provided with this "substantial mitigating information, the [ ] court imposed a lengthy sentence based primarily on the serious nature of the crime." Appellant's Brief at 18. Moreover, he states the "comments made by the trial court do not reflect any meaningful consideration of information relating to [his] character and rehabilitative needs[.]". *See id.* Appellant contends that while the court "presided over a re-sentencing hearing during which considerable information was introduced by Appellant, one cannot discern from the record the sentencing court's analysis of that information." *Id.* at 19. Additionally, he states that the court "referred back to notes on the trial and commented only that the . . . matter is a 'bad case[']" and that the court's "comments offer no suggestion that it gave meaningful consideration to anything other than the serious nature of the case." *Id.* at 20.

There is no automatic right to review of a challenge to the discretionary aspects of sentencing. ***Commonwealth v. White***, 193 A.3d 977, 982 (Pa. Super. 2018).

> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal [was timely-filed]; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [pursuant to Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Id.*** (citation omitted).

Appellant has satisfied the first three prongs of this analysis, where he raised this challenge in a post-sentence motion,[7] filed a timely appeal, and included in his brief a Rule 2119(f) statement. ***See*** Appellant's Brief at 16-17. Therefore, we now consider whether Appellant has raised a substantial question for our review.

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

---

[7] ***See*** Appellant's Post Sentence Motion, 12/29/21, at 1-2 (unpaginated).

*Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) (citation omitted).

This Court has previously determined that a substantial question exists when the issue is "whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct[.]" *Commonwealth v. Gonzalez-DeJusus*, 994 A.2d 595, 598-99 (Pa. Super. 2010) (footnote omitted). Moreover, a claim that a court imposed an excessive sentence after not considering mitigating circumstances raises a substantial question. *See Commonwealth v. Akhmedov*, 216 A.3d 307, 328 (Pa. Super. 2019) (*en banc*) ("[A]n excessive sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises a substantial question.") (citation omitted). Lastly, a claim that the court focused on a single sentencing factor raises a substantial question. *See Commonwealth v. Lawrence*, 960 A.2d 473, 478 (Pa. Super. 2008) (substantial claim raised where appellant claimed "the sentencing court focused solely on the serious nature of the crime"). As such, we interpret Appellant's assertions to fall under these types of substantial questions. Therefore, we may proceed to consider the merits of his argument.

We consider the relevant standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather,

the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019) (citation omitted). "[W]hen imposing sentence, the trial court is granted broad discretion, as it is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Mulkin*, 228 A.3d 913, 917 (Pa. Super. 2020).

This Court has also stated:

[W]hen imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.[ ] § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on the victim and community, and rehabilitative needs of the defendant. . . .

Furthermore, [a] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence[.] The sentencing court, however, must also consider the sentencing guidelines.

*Clemat*, 218 A.3d at 960 (citation omitted & paragraph break added).

When imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation.

However, where the sentencing judge had the benefit of a presentence investigation report . . . it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

*Id.* at 959-60 (citations omitted & paragraph break added).

- 9 -

Here, the trial court[8] had the benefit of the original sentence, prior "sentencing memorand[a]," defense counsel's sentencing memorandum, "psychological, psychosexual, psychiatric" evaluations, and substance abuse evaluations. *See* N.T., 12/20/21, at 4; *see also* Trial Ct. Op. at 9. Appellant had a prior record score of five; the OGS for attempted rape was 11, the offense gravity score (OGS) for burglary was nine, the OGS for indecent assault was five, and the OGS for both criminal trespass and simple assault was three. *See* N.T. at 6; *see also* Commonwealth's Sentencing Memorandum, 2/9/18, at Appendix "A" (Sentencing Guidelines).[9] The court-imposed sentences were all at the top end of the respective standard ranges. *See* N.T. at 21; *see also* Trial Ct. Op. at 7. We note that "[w]here the sentencing court impose[s] a standard-range sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive. In those circumstances, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011) (citations and quotation marks omitted).

---

[8] The trial judge was the same judge at Appellant's original sentencing and resentencing. *See* Trial Ct. Op. at 9.

[9] At resentencing, the Commonwealth indicated the prior guidelines were in effect several years ago were the same. *See* N.T. at 19.

Nonetheless, at sentencing, the trial court heard from the Commonwealth as to its recommendation for imposing sentences that were in the aggravated range and were to run consecutively. *See* N.T. at 4-8. In seeking the imposition of consecutive, aggravated range sentences, the Commonwealth stated several factors:

> One of them is the age of the victim, . . . that she was 81 years old and a vulnerable member of the community. The impact on the victim . . . her having to deal with this as well as her family in her later years of life, the lack of remorse of [Appellant], and the continued lack of remorse of [Appellant] and the heinousness of the crime[, where Appellant fractured the victim's collarbone,] . . . as well as his continued incompliance and the fact that he is not a candidate for supervision in general.

*Id.* at 6. The Commonwealth further pointed out that Appellant had 16 prior convictions, ranging from 1992 to 2011, and that his prior parole officer stated that Appellant "was incapable of complying in 2011" and he "maxed . . . out on his sentence at that time." *Id.* The Commonwealth also noted that Appellant's prior criminal history, involved "four violent or serious crimes" and his offenses were "escalat[ing]" in their violent nature. *Id.* at 7. Lastly, the Commonwealth indicated that Appellant refused "to cooperate in the evaluations when [they] were preparing for sentencing." *Id.*

The trial court also heard from Appellant's counsel who did not deny that the assault "happened" and that it was "heinous." N.T. at 8. Counsel stated that Appellant had "a diagnosed bipolar disorder" that had "not been treated[,]" and he "was depressed and schizophrenic." *Id.* at 9-10. Counsel noted that Appellant served the maximum sentence for his 2011 sentence

- 11 -

because he was "not willing to admit" his guilt. *Id.* at 9. Counsel also pointed out that Appellant had been abused by his babysitter when he was 13 years old, and he had "a drug and alcohol problem" in addition to "a serious mental health problem." *Id.* at 10. Counsel emphasized that Appellant is "very complex person" and not someone "who is just a sociopath [and] unable to be able to help people[.]" *Id.* at 11-12.

The court was also privy to letters introduced by Appellant to show he had support in the community, including one from an 89-year-old woman named Clara Beasley who wrote that Appellant was "one of the nicest, kindest, caring and loving and Christ-filled person [she had] ever met." N.T. at 9. Appellant's mother, his pastor — Pastor Raymond Merriweather — and the pastor's wife attended the sentencing hearing in support of Appellant. *Id.* at 12. Pastor Merriweather testified he made Appellant a "deacon in training" and his congregation "saw that [Appellant] was moving in a positive direction." *Id.* at 16. The pastor also stated that he was willing to support Appellant when he is released from prison. *Id.* at 18.

Appellant also invoked his right to allocution, testifying to the following:

> Your Honor, I'm actually sitting here in awe. From what I heard from the Commonwealth, my attorney and all the support that I have . . . at this particular time I would like to just allow everything that has been said to speak in [sic] my behalf. And at this particular time, . . . I don't have anything to say except on [sic] all those who have known me and what they said and anything that has been said throughout this resentencing, and with that, thank you.

N.T. at 20.

- 12 -

At the conclusion of the proceeding, the trial court explained its rationale as follows:

> In reviewing and preparing for the resentencing I did review all the notes I had including the psychological evaluations, psychiatric evaluation, psychosexual evaluations, substance abuse evaluations. I reviewed my notes on the . . . prior sentencing memos, prior sentence. And basically, had to relive the trial again and kind of get a feel for what went on in 2015. . . . This was a bad case. 2018 was the sentencing, and a bad situation. And I did sentence [Appellant] in the aggravated range for the most part. In reviewing this case and hearing the statements of the parties I have decided to sentence [Appellant] as follows and these sentences . . . are in the standard range, upper end of the standard range for each charge.

N.T. at 20-21.

In its Pa.R.A.P. 1925(a) opinion, the trial court supplemented its statements at sentencing with the following:

> Th[e trial] court considered statements proffered by Appellant including: Appellant has diagnosed but untreated bipolar disorder; Appellant was abused when he was [13] years old; Appellant has a drug and alcohol history; Appellant's serious convictions are old and date back to the 1990s; Appellant has suicidal ideations and attempts; Appellant has problems "but he also has this other side of him that's wonderful[."] Appellant has significant support from the community; courts often consider mitigation for people with significant mental health issues and drug and alcohol issues; Appellant realizes if he [does not] admit he is likely to serve his maximum, but the bipolar and mania likely is a part of the reason why Appellant remains incapable of admitting; Appellant had support of the people who appeared in court. . . . Appellant endured more difficult conditions of confinement due to COVIDI9; Pastor Merriweather stated Appellant was active in the church and was a deacon in training and he still is willing to support Appellant. Appellant has made strides toward rehabilitation while confined and teaches bible studies to other confined individuals; Appellant needs mental health treatment and counseling.

\* \* \*

- 13 -

Having presided over the trial and the earlier court proceedings, and having rereviewed Appellant's evaluations and considering them for resentencing, and having carefully listened to and discerned the Commonwealth's statement and Appellant's continuing defense at the resentencing hearing, th[e] court conscientiously considered all the information and evidence in the case as it applies specifically to Appellant for purposes of sentencing including: the advanced age of the victim; the abhorrent, heinous, and serious nature of the criminal episode; the gravity of the offense and the impact of the crime on the victim, her family, and the community; the protection of the public; the rehabilitative needs of Appellant; Appellant's prior record score of 5 and the age of the serious previous convictions; Appellant's mental health issues, including previous suicide attempts and diagnosed but untreated bipolar disorder; Appellant's history of untreated drug and alcohol abuse issues; the abuse Appellant endured when he was a teenager; the ardent support Appellant has from family and the community; Appellant's steps toward his own rehabilitation while confined and the fact Appellant was a deacon in training and regularly attends church services and teaches bible studies classes mentoring other confined individuals; the unusually difficult conditions of confinement during the COVID 19 pandemic; the fact these crimes arose from a single criminal episode; Appellant's contention the behavior that constituted the offenses was aberrant and would not be repeated.

Th[e trial] court also carefully considered the sentencing guidelines and weighing all the information before the court ultimately concluded the new sentence should be a standard range sentence and not an aggravated range sentence. In fact, in determining Appellant's new sentence, th[e] court insured all the sentences for each of Appellant's convictions fall in the standard range of the sentencing guidelines.

The sentence is not overly harsh and manifestly excessive, given the nature of the crime and the length of sentence. Additionally, although Appellant was 50 years of age at the time of resentencing, th[e trial] court does not agree the sentence will amount [to] a life sentence. The judgment of sentence was specifically designed to take into consideration the individual and specific rehabilitative needs of Appellant balanced against the

serious nature of the crimes and its impact on the victim and protection of the public.

> Th[e trial] court considered all the mitigating circumstances raised by Appellant. Th[e] court is not persuaded [by] the mitigating circumstances, including Appellant's claim these crimes arose from a single criminal episode and the sexual assault behavior was aberrant and would not be repeated and Appellant's argument he "cannot admit" and likely will be confined until the expiration of the maximum term of confinement, compel the grant of a lesser sentence. Although his mental illness may be a reason for his inability to admit his actions, th[e] court is convinced it is not the only reason, and the evidence in this case is overwhelming to support the heinous, abhorrent nature of these criminal convictions and the judgment of sentence. Th[e] court absolutely did not abuse discretion when it entered judgment of sentence upon Appellant. This sentence is not tantamount to a life sentence and it is not overly harsh or manifestly excessive and Appellant's claim to the contrary is absurd. . . .

Trial Ct. Op. at 8-11 (record citations omitted & some paragraph breaks added).

Under our standard of review, we conclude the trial court did not abuse its discretion with regard to Appellant's sentence. Contrary to his argument, it is evident from the sentencing hearing and the Rule 1925(a) opinion that the court considered the required factors under Section 9721(b). Likewise, the court acknowledged its understanding of the sentencing guidelines, and articulated a sufficient statement of reasons for the sentence imposed.

Appellant's assertions fail for several reasons. First, the court was within its discretion to impose consecutive sentences, even though it amounted to a lengthy sentence. *See Commonwealth v. Clary*, 226 A.3d 571, 581 (Pa. Super. 2020) ("[D]efendants convicted of multiple offenses are not entitled to

a 'volume discount' on their aggregate sentence.") (citation omitted). Further, we will not disturb consecutive sentences unless the aggregate sentence is "grossly disparate" to the defendant's conduct, or "viscerally appear[s] as patently unreasonable." **Gonzalez-Dejusus**, 994 A.2d at 599 (citation omitted). As the trial court pointed out in support of the imposition of consecutive sentences: "The judgment of sentence was specifically designed to take into consideration the individual and specific rehabilitative needs of Appellant balanced against the serious nature of the crimes and its impact on the victim and protection of the public." Trial Ct. Op. at 11. Thus, we discern it was reasonable for the court to impose all consecutive sentences.

Second, contrary to Appellant's arguments concerning the assault being a single episode and there was mitigating evidence to support a lesser sentence, we observe the trial court did consider substantial mitigating evidence, including his mental health condition and need for rehabilitation. **See** Trial Ct. Op. at 8. Appellant fails to recognize that the court did not accept defense counsel's arguments and evidence where it stated it was "not persuaded [by] the mitigating circumstances, including Appellant's claim these crimes arose from a single criminal episode and the sexual assault behavior was aberrant and would not be repeated[.]" Trial Ct. Op. at 11. Moreover, the court pointed out that "[a]lthough [Appellant's] mental illness may be a reason for his inability to admit his actions, th[e] court is convinced it is not the only reason, and the evidence in this case is overwhelming to

support the heinous, abhorrent nature of these criminal convictions and the judgment of sentence." *Id.*

Lastly, it is evident from both the court's statements at the December 2021 resentencing hearing and its Rule 1925(a) opinion that the court did not base Appellant's sentence primarily on the serious nature of the crime; rather, the court considered all relevant sentencing factors — the protection of the public, the gravity of offense in relation to impact on the victim and community, and the rehabilitative needs of Appellant. *See* 42 Pa.C.S. § 9721(b). As such, we conclude the court's determination does not amount to an abuse of discretion, and Appellant's challenge to the discretionary aspects of his sentence fails.

In Appellant's argument, he also contends that the crime of criminal trespass merges with the crime of burglary for sentencing purposes, and therefore, his criminal trespass sentence is illegal. *See* Appellant's Brief at 21. Appellant acknowledges that in *Commonwealth v. Quintua*, 56 A.3d 399 (Pa. Super. 2012), a panel of this Court held that criminal trespass and burglary each contain an element that the other does not and therefore, the crimes do not merge for sentencing purposes. *See id.* at 402; Appellant's Brief at 22-23. Nevertheless, Appellant suggests "the *Quintua* analysis is incomplete" because "it leaves out Subsection (b)" of the burglary statute, which concerns a defense to prosecution for the crime. Appellant's Brief at 23. He states:

It is a defense to the crime of [b]urglary if Appellant is licensed or privileged to enter the victim's apartment, [18 Pa.C.S. §] 3502](b)(3); indeed, if Appellant were so licensed or privileged, such entry would be excused. By virtue of the definition of an element of the offense set out in [18 Pa.C.S. § 103[10]], the lack of privilege or license to enter becomes an element of the crime of [b]urglary. As the Commonwealth would be required to eliminate any privilege or licensure for Appellant's entry into the victim's apartment for the crime of [b]urglary, the elements of the crime of trespass, (1) entry (2) without license or privilege, are found in the [b]urglary statute. The two offenses therefore merge for sentencing purposes, with [b]urglary having the added element of intent to commit a crime upon entry.

*Id.* at 24-25.

This Court previously has explained:

A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence; therefore, our standard of review is *de novo* and our scope of review is plenary.

---

[10] Section 103 of the Crimes Code defines "element of the offense as follows:

**"Element of an offense."** Such conduct or such attendant circumstances or such a result of conduct as:

(1) is included in the description of the forbidden conduct in the definition of the offense;

(2) establishes the required kind of culpability;

(3) negatives an excuse or justification for such conduct;

(4) negatives a defense under the statute of limitation; or

(5) establishes jurisdiction or venue.

18 Pa.C.S. § 103(1)-(5).

Our legislature has defined the circumstances under which convictions for separate crimes may merge for the purpose of sentencing.

**Merger of sentences.** No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.[ ] § 9765.

To determine whether offenses are greater and lesser included offenses, we compare the elements of the offenses. If the elements of the lesser offense are all included within the elements of the greater offense and the greater offense has at least one additional element, which is different, then the sentences merge. If both crimes require proof of at least one element that the other does not, then the sentences do not merge.

*Commonwealth v. Hill*, 140 A.3d 713, 715-16 (Pa. Super. 2016) (some

citations omitted).

The Crimes Code defines burglary, in pertinent part, as follows:

**(a) Offense defined.** A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1)(i) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein;

(ii) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]

- 19 -

18 Pa.C.S. § 3502(a).[11]

The Crimes Code defines criminal trespass, in relevant part, as follows:

**(a) Buildings and occupied structures.**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

18 Pa.C.S. § 3503(a)(1).

As mentioned above, the *Quintua* Court concluded that criminal trespass and burglary each contain an element that the other does not and therefore, the crimes do not merge for sentencing purposes. Specifically, this Court opined:

Examining the elements of criminal trespass, a conviction for that offense requires a person: (1) to break or enter into with subterfuge any building or occupied structure; (2) knowing he is

---

[11] The burglary statute provides:

**(b) Defense.** It is a defense to prosecution for burglary if any of the following exists at the time of the commission of the offense:

(1) The building or structure was abandoned.

(2) The premises are open to the public.

(3) The actor is licensed or privileged to enter.

18 Pa.C.S. § 3502(b)(1)-(3).

- 20 -

not licensed or privileged to do so. On the other hand, to commit burglary, a person must: (1) enter a building or occupied structure; (2) with intent to commit a crime therein. The plain language of the respective statutes demonstrates why they do not merge. Criminal trespass contains an element of knowledge—a person committing that offense must know he is not privileged to enter the premises. Burglary has no such knowledge requirement. Burglary does, however, require intent to commit a crime within the premises, an element that criminal trespass lacks. As each offense requires proof of an element the other does not, the sentences should not merge.

*Quintua*, 56 A.3d at 402 (citations omitted).

We note that regardless of the merit of Appellant's argument, we reject his assertion asking us to distinguish *Quintua* by finding it "incomplete." Appellant's Brief at 23. We are "bound by existing precedent and, therefore, lack[ ] the authority to overturn another panel decision. ***See Commonwealth v. Beck***, 78 A.3d 656 (Pa. Super. 2013) (holding that a three-judge panel of this Court is 'not empowered to overrule another panel of the Superior Court')." ***See Commonwealth v. May***, 271 A.3d 475, 482 (Pa. Super. 2022), *appeal denied*, 286 A.3d 214 (Pa. 2022). Therefore, we are bound by *Quintua*, and conclude that Appellant's merger argument must fail.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2023