J-S30033-18

2018 PA Super 214

COMMONWEALTH OF PENNSYLVANIA,      :      IN THE SUPERIOR COURT OF
:            PENNSYLVANIA
         Appellee        :
:
           v.           :
:
NICHOLAS ANDREW WHITE,        :
:
        Appellant      :      No. 1689 WDA 2017

Appeal from the Judgment of Sentence October 18, 2017
in the Court of Common Pleas of Butler County
Criminal Division at No(s): CP-10-CR-0011435-1998

BEFORE:    BENDER, P.J.E., STABILE, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:             FILED JULY 20, 2018

Nicholas Andrew White (Appellant) appeals from the October 18, 2017 judgment of sentence imposed following a resentencing hearing pursuant to Miller v. Alabama, 567 U.S. 460 (2012),[1] and Commonwealth v. Batts (Batts II), 163 A.3d 410 (Pa. 2017). We affirm.

On July 31, 1998, Appellant, then 17 years old, shot and killed his father and disposed of his body. Following a jury trial, Appellant was convicted of first-degree murder and abuse of a corpse. On September 28, 1999, the trial court sentenced Appellant to life imprisonment without parole (LWOP) for first-degree murder, and two to four months' imprisonment for

---

[1] In Miller, the United States Supreme Court held that a "mandatory [sentence of] life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments." 567 U.S. at 465 (internal quotations omitted).

*Retired Senior Judge assigned to the Superior Court.

abuse of a corpse. This Court affirmed Appellant's judgment of sentence on September 26, 2000. Commonwealth v. White, 79 WDA 2000 (Pa. Super. 2000) (unpublished memorandum). Appellant did not file a petition for allowance of appeal to our Supreme Court.

On July 9, 2010, Appellant filed his first petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Counsel was appointed and filed three amended petitions. In the second amended petition, Appellant relied on Miller to establish an exception to the PCRA's timeliness requirements. Second Amended PCRA Petition, 7/5/2012, at ¶ 6. The PCRA court stayed the proceedings pending our Supreme Court's decision in Commonwealth v. Cunningham, 81 A.3d 1 (Pa. 2013), wherein our Supreme Court ultimately concluded that the holding in Miller did not apply retroactively to cases on collateral appeal. Accordingly, the PCRA court dismissed Appellant's petition as untimely filed. Appellant filed a notice of appeal to this Court, and we affirmed the PCRA court's order. Commonwealth v. White, 125 A.3d 450 (Pa. Super. 2015) (unpublished memorandum).

Thereafter, the United States Supreme Court held that Miller applied retroactively, essentially overruling Cunningham. Montgomery v. Louisiana, ___ U.S. ___, 136 S.Ct. 718 (2016). Following that decision, Appellant filed a second PCRA petition on March 7, 2016. The PCRA court appointed counsel, who filed an amended PCRA petition.

- 2 -

On October 18, 2017, after a hearing, the PCRA court granted Appellant's PCRA petition and resentenced Appellant to 35-years-to-life imprisonment. Appellant filed a post-sentence motion on October 26, 2017, alleging that the PCRA court did not state on the record how it weighed the Miller factors. Further, Appellant contended the PCRA court impermissibly imposed a mandatory sentence pursuant to 18 Pa.C.S. § 1102.1, and, even if it did not impose the mandatory sentence, Appellant's sentence was excessive because "it does not give [Appellant], who has demonstrated rehabilitation, an individualized sentence with a meaningful opportunity for parole[.]" Appellant's Post-Sentence Motion, 10/26/2017, at ¶¶ 4, 9-12. The PCRA court denied Appellant's motion without a hearing, and this timely-filed notice of appeal followed.[2]

On appeal, Appellant presents the following issues for our consideration.

    A. Whether the [PCRA] court erred in not articulating its analysis of the Miller[] factors when sentencing [Appellant.]

    B. Whether the [PCRA] court erred and abused its discretion by failing to consider evidence that [Appellant] had been rehabilitated while incarcerated, which resulted in an excessive sentence for a juvenile being sentenced pursuant to Miller[.]

    C. Whether the [PCRA] court erred in applying the sentencing mandatory in 18 Pa.C.S. §[ ]1102.1 to [Appellant], in

---

[2] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

violation of due process and the prohibition against ex post facto laws[.]

D. Whether the [PCRA] court erred in impos[]ing a sentence that does not offer a meaningful chance of parole for [Appellant], a juvenile offender [who] has not been found to be incapable of rehabilitation, said "meaningful chance of parole" being a requirement of Miller[.]

Appellant's Brief at 5-6 (unnecessary capitalization and suggested answers omitted; reordered for ease of disposition).

Appellant's first two claims implicate the discretionary aspects of his sentence.

It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.

Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal [was timely-filed]; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

Commonwealth v. Disalvo, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted).

Appellant has satisfied the first two requirements: he timely filed a notice of appeal and he sought reconsideration of his sentence in a post-sentence motion. However, Appellant has failed to comply with the

requirements of Pa.R.A.P. 2119(f).[3]   Nonetheless, because the Commonwealth has not objected, we will not find Appellant's discretionary-aspects-of-sentencing claims waived.   See Commonwealth v. Brougher, 978 A.2d 373, 375 (Pa. Super. 2009).   Therefore, we now consider whether Appellant has raised a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis.   Commonwealth v. Paul, 925 A.2d 825, 828 (Pa. Super. 2007).   "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."   Commonwealth v. Griffin, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

---

[3] Appellant has not included a separate statement of reasons relied upon for appeal in his brief.   Pa.R.A.P. 2119(f) ("An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence.").   Instead, he included a short statement only as to his second claim on appeal within that argument section.   Appellant's Brief at 23-24. Even if we ignored Appellant's failure to set forth his 2119(f) statement in a separate section, his attempt at compliance still does not meet the minimum requirements.   See Commonwealth v. Mastromarino, 2 A.3d 581, 585–86 (Pa. Super. 2010) ("At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.").

Appellant contends that his sentence is excessive because (1) the PCRA court did not articulate its analysis of the Miller factors on the record, leaving Appellant "with no way to determine if the [PCRA] court fairly considered the factors[;]" and (2) the PCRA court failed to consider evidence of Appellant's rehabilitation. Appellant's Brief at 14, 23.

As the Court in Batts II explained,

[t]he Miller Court concluded that sentencing for juveniles must be individualized. This requires consideration of the defendant's age at the time of the offense, as well as "its hallmark features," including:

immaturity, impetuosity, and failure to appreciate risks and consequences[;] … the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional[;] … the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him[;] … that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys[;] … [and] the possibility of rehabilitation … when the circumstances [i.e. (the youthfulness of the offender)] most suggest it.

Batts II, 163 A.3d at 431 (citations omitted). However, a sentencing court must consider these Miller factors only in cases where the Commonwealth is attempting to meet its burden of overcoming the presumption against juvenile LWOP sentences. Commonwealth v. Melvin, 172 A.3d 14, 24 (Pa. Super. 2017). Because the Commonwealth did not seek a LWOP

sentence, "this issue is moot as application of the Miller factors is immaterial. However, to the extent that Appellant's issue can be read to raise a claim that the court failed to consider relevant sentencing factors outlined in the sentencing code, we consider such arguments under the discretionary-aspects-of-sentencing scheme []." Commonwealth v. Machicote, 172 A.3d 595, 602 n.3 (Pa. Super. 2017), appeal granted, ___ A.3d ___, 2018 WL 2324339 (Pa. May 22, 2018).[4]

Accordingly, Appellant's claims amount to an allegation that Appellant's minimum sentence is manifestly excessive because the PCRA court failed to consider various mitigating factors. In that regard,

> "this Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." []Disalvo, 70 A.3d [at] 903 [] (internal citation omitted).
>
> However, "prior decisions from this Court involving whether a substantial question has been raised by claims that

---

[4] Appellant also asks this Court to create an "additional procedural safeguard to assure the Miller factors truly are considered" by requiring sentencing courts to articulate their analysis of the Miller factors on the record. Appellant's Brief at 15. That issue is before our Supreme Court currently. Machicote, ___ A.3d ___, 2018 WL 2324339 (granting review as to "[w]hether[] a court sentencing a juvenile defendant for a crime for which [LWOP] is an available sentence must review and consider on the record the Miller factors [] regardless [of] whether the defendant is ultimately sentenced to [LWOP]"). Because that case is still pending, our Court's conclusion in Machicote that application of the Miller factors is unnecessary when a LWOP sentence is not sought remains controlling law. Thus, we will only review Appellant's first claim insofar as it challenges the discretionary aspects of his sentence.

the sentencing court 'failed to consider' or 'failed to adequately consider' sentencing factors [have] been less than a model of clarity and consistency." Commonwealth v. Seagraves, 103 A.3d 839, 842 (Pa.[ ]Super.[ ]2014) (citing [Commonwealth v. Dodge, 77 A.3d 1263 (Pa. Super. 2013)]). In []Dodge, this Court determined an appellant's claim that the sentencing court "disregarded rehabilitation and the nature and circumstances of the offense in handing down its sentence" presented a substantial question. Dodge[, 77 A.3d] at 1273.

This Court has also held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.

Commonwealth v. Caldwell, 117 A.3d 763, 769–70 (Pa. Super. 2015) (en banc) (some citations and quotation marks omitted). Based on the above precedent, we find that Appellant has raised a substantial question and will review the merits of his claim.

We review discretionary-aspects-of-sentence claims under the following standard.

If this Court grants appeal and reviews the sentence, the standard of review is well-settled: sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

Commonwealth v. Malovich, 903 A.2d 1247, 1252–53 (Pa. Super. 2006) (citations omitted).

In Batts II, our Supreme Court held, inter alia, that a lower court, in resentencing a juvenile offender convicted of first-degree murder prior to Miller, may impose a minimum term-of-years sentence and a maximum

sentence of life imprisonment, thus "exposing these defendants to parole eligibility upon the expiration of their minimum sentences." Batts II, 163 A.3d at 439. In determining the minimum term-of-years sentence, the Court mandated that lower courts consult the sentencing requirements codified at 18 Pa.C.S. § 1102.1 for guidance. Id. at 457. Specifically for a juvenile convicted of first-degree murder pre-Miller, the portion of section 1102.1 that a lower court must consider is the guidelines set forth in subsection 1102.1(a). Subsection 1102.1(a)(1) provides, in relevant part, as follows.

> (a) First degree murder.--A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:
>
> > (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

18 Pa.C.S. § 1102.1(a)(1).

At the resentencing hearing, the PCRA court heard testimony from Appellant, wherein he accepted responsibility for his actions and apologized; Appellant's mother on Appellant's behalf; and Appellant's uncle on behalf of the victim. In addition to the testimony and arguments of counsel, the PCRA court reviewed Appellant's extensive sentencing memorandum, which

included transcripts from the decertification hearing, witness statements from Appellant's jury trial, and the mitigation expert's report. N.T., 10/18/2017, at 3, 6-60. See Commonwealth v. Boyer, 856 A.2d 149, 154 (Pa. Super. 2004) (stating that where the sentencing court has the benefit of a pre-sentence investigation (PSI) report, it is presumed to have considered all relevant information).[5] Moreover, the PCRA court stated that it was guided by the legislative intent behind 18 Pa.C.S. § 1102.1(a) and the goal of uniformity announced in Batts II for sentencing pre- and post-Miller cases, and imposed a thirty-five-year-to-life sentence. N.T., 10/18/2017, at 59-60. Because Appellant's sentence is compliant with subsection 1102.1(a)(1) and Batts II, and the PCRA court had the benefit of the comprehensive sentencing memorandum, we find the PCRA court considered

_____

[5] While the record does not indicate that the PCRA court had the benefit of a PSI report, the sentencing memorandum was the functional equivalent of a PSI report, and therefore provided the PCRA court with the requisite background information to make an informed decision about what minimum sentence to impose.

> The first responsibility of the sentencing judge [is] to be sure that he ha[s] before him sufficient information to enable him to make a determination of the circumstances of the offense and the character of the defendant. Thus, a sentencing judge must either order a PSI report or conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and background....

Commonwealth v. Carrillo-Diaz, 64 A.3d 722, 725–26 (Pa. Super. 2013) (citation omitted).

the relevant mitigating factors, and did not abuse its discretion in fashioning Appellant's sentence.

Next, Appellant claims that the PCRA court erred in applying the mandatory sentence set forth in 18 Pa.C.S. § 1102.1(a)(1), in violation of due process and the prohibition against ex post facto laws. Appellant's Brief at 16. This claim implicates the legality of Appellant's sentence. "Issues relating to the legality of a sentence are questions of law[.] … Our standard of review over such questions is de novo and our scope of review is plenary." Commonwealth v. Cardwell, 105 A.3d 748, 750 (Pa. Super. 2014) (citations and quotations omitted).

As detailed supra, the lower court must consider the sentencing requirements codified at 18 Pa.C.S. § 1102.1 in fashioning a term-of-years-to-life sentence for offenders convicted pre-Miller. Batts II, 163 A.3d at 457. Appellant acknowledges this, but argues there is no difference between a trial court being guided by the statute and imposing it ex post facto. Appellant's Brief at 18-19. We disagree. The PCRA court did not apply the mandatory minimum, but rather did as Batts II requires, and considered subsection 1102.1(a)(1) for guidance, along with the testimony and exhibits presented at his resentencing hearing, in fashioning Appellant's minimum sentence of 35 years' imprisonment. See PCRA Court Opinion, 12/20/2017, at 2 (unnumbered) (clarifying that "the [PCRA c]ourt did not impose the mandatory minimum sentence contained in 18 Pa.C.S.[] § 1102.1").

Accordingly, Appellant has not convinced us that the PCRA court imposed an illegal sentence.

Finally, Appellant claims that the PCRA court imposed a de facto LWOP sentence because his minimum sentence of 35 years does not offer Appellant a meaningful opportunity for parole. Appellant's Brief at 20.

"[A] trial court may not impose a term-of-years sentence, which constitutes a de facto LWOP sentence, on a juvenile offender convicted of homicide unless it finds, beyond a reasonable doubt, that he or she is incapable of rehabilitation."[6] Commonwealth v. Foust, 180 A.3d 416, 431 (Pa. Super. 2018). "There are certain term-of-years sentences [that] clearly constitute de facto LWOP sentences. For example, a 150-year sentence is a de facto LWOP sentence. Similarly, there are clearly sentences [that] do not constitute de facto LWOP sentences. A sentence of 30 years to life falls into this category." Id. at 438.

Appellant's minimum sentence of 35 years of imprisonment falls between these two categories. This Court "decline[d] to draw a bright line in [Foust] delineating what constitutes a de facto LWOP sentence and what constitutes a constitutional term-of-years sentence." Id. However, this

---

[6] The Commonwealth conceded at Appellant's resentencing hearing that a LWOP sentence was not an option in this case because it could not meet the burden necessary to prove that Appellant was incapable of rehabilitation. N.T., 10/18/2017, at 56.

Court recently outlined the procedure for determining where such "in-between" minimum sentences fall on the Foust spectrum.

> The key factor in considering the upper limit of what constitutes a constitutional sentence, in this narrow context, appears to be whether there is "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Graham[ v. Florida], 560 U.S. [48,] 75[ (2010)]. Implicit in this standard is the notion it would not be meaningful to provide an opportunity for release based solely on the most tenuous possibility of a defendant's surviving the minimum sentence imposed. To be meaningful or, at least, potentially meaningful, it must at least be plausible that one could survive until the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits. Thus, though it expressly declined to do so, the Foust Court seemed to suggest some sort of meaningful-opportunity-for-release standard by declaring that a 150–years–to–life sentence constitutes a de facto LWOP sentence.

Commonwealth v. Bebout, ___ A.3d ___, 2018 WL 2076083 at *3 (Pa. Super. filed May 4, 2018) (footnote omitted; emphasis in original). Applying this test, we concluded in Bebout that a sentence of 45-years-to-life imprisonment did not constitute a de facto LWOP sentence.

> [Bebout's] opportunity for release [was] meaningful, especially in light of the gravity of his crime, because he has the potential to live for several decades outside of prison if paroled at his minimum.
>
> Thus, based on the record and arguments before us we conclude that [Bebout] has simply failed to meet his burden of demonstrating that the lower court sentenced him to a de facto LWOP sentence. There simply is no comparison between the opportunity to be paroled at 60 years of age and 100+ years of age. The difference is, quite literally, a lifetime. As such, we are not convinced that [Bebout's] sentence is the functional equivalent of LWOP.

Id. at *5 (emphasis in original; footnote omitted).

Here, the PCRA court sentenced Appellant to a minimum term of 35 years' imprisonment. Appellant has been incarcerated for this crime since he was 17 years old. Accordingly, Appellant will be eligible for parole when he is 52 years old. Based on the record before us, we conclude that Appellant's term-of-years minimum sentence does not constitute a de facto LWOP sentence, and his claim that his sentence offers him no meaningful opportunity for parole is without merit.

Accordingly, after a thorough review of the record and briefs, we find Appellant has presented no issue on appeal that would convince us to disturb his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2018