J-A29029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAHLI WOODS | : | |
| | : | |
| Appellant | : | No. 1457 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 25, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0009784-2018

BEFORE:    OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED: April 29, 2025**

Jahli Woods ("Woods") appeals from the judgment of sentence imposed following his jury trial conviction of aggravated assault.[1]  Additionally, Woods' court-appointed counsel, Rachael Santoriella, Esquire ("Attorney Santoriella"), has filed a petition to withdraw from representation and a brief styled pursuant to **Anders v. California**, 386 U.S. 738 (1967).   We grant Attorney Santoriella's petition and affirm the judgment of sentence.

On the afternoon of July 6, 2018, police responded to a call about a person shot, Lavar Treadwell (the "Victim"), in McKees Rocks, Allegheny County.  The Victim sustained a gunshot to his chest but survived.  The trial

_____

[1] **See** 18 Pa.C.S.A. § 2702(a)(1).

court summarized the trial testimony of Biago Shipman ("Shipman"), who witnessed the shooting:

> . . . Shipman . . . was driving . . . on the day of the shooting. [H]e received a call from [his schoolmate,] Rachel Yadav [("Yadav"),] suggesting they go swimming. Shipman picked Yadav up and then picked up another mutual friend, Marie Carswell [("Carswell")]. At the request of the women, he also picked [the Victim] up. He met [the Victim] for the first time that day. [The Victim] sat in the front[] passenger seat[.]
>
> The four . . . travelled to Carswell's house so the women could get bathing suits. The women exited the vehicle. Shipman heard someone call out to the women but he did not see that person. While Shipman and [the Victim] were waiting[ in the car,] Shipman received a phone call from one of the women telling him that something was about to happen and they needed to leave[.]
>
> As Shipman started to drive away, he noticed an individual walking from the sidewalk [toward his car]. That individual was holding a handgun and [fired it] at Shipman's vehicle. Bullets penetrated the windshield. Shipman ducked down[.] After the shooting stopped, Shipman confirmed that he was not shot[, but observed] that [the Victim] was shot[.] Shipman drove [the Victim] directly to the hospital.
>
> Shipman's [vehicle] had four bullet holes in it[:] two . . . in the windshield, one . . . in the driver's side front fender and one . . . in the driver's side door. The rear passenger side window was also shot out.

Trial Court Opinion, 3/25/24, at 2-3 (paragraph breaks added).[2]

The trial court also summarized Yadav's trial testimony as follows:

> Yadav . . . agreed with Shipman, Carswell and [the Victim] to go swimming on the day of the shooting. [They] went to Carswell's house to find bathing suits. [When they arrived and she] exited Shipman's vehicle, [Woods] was there and he gestured toward

---

[2] For ease of review, we have omitted the trial court's use of the honorifics "Mr." and "Ms." in referring to the witnesses above.

Carswell for the women to come to him. The women approached [Woods, who] indicated that he was agitated that [the Victim] was with them. His hands were near the front pockets of a jacket or hoodie and it appeared as if he was "fidgeting" with something. Yadav testified that [Woods] and Carswell had previously had a romantic relationship.

*Id*. at 4.

At the hospital following the shooting, Carswell provided Woods' name to Allegheny County Police Detective Dale Canofari ("Detective Canofari") and McKees Rocks Police Chief Richard Dielman ("Chief Dielman"). Carswell did not say, however, that Woods had a firearm or shot the Victim. **See** N.T. Jury Trial, 4/24-28/23 ("N.T., 4/24/23"), at 182, 190, 260-61. Based on this information, **another** detective obtained Woods' photo to compile a photo array.

[T]he Pennsylvania Justice CPIN database, [which is] comprised of thousands of . . . photographs . . . randomly select[ed seven] photographs of persons with similar physical traits as the target photograph. These similar traits include approximate age, skin color, [and] hair color. [The detective] could not select individual photographs to use in the array[;] the database program randomly selected them. The array . . . contained eight photographs.

Within a few hours of the shooting, Detective . . . Canofari administered the photo array to Shipman. [Detective Canofari did not know Woods nor which photograph was of Woods]. Detective Canofari read . . . the Allegheny County Police Department Photo Collection instructions[, which] informed Shipman[:] the person who committed the crime may or may not be in the photo array[;] Shipman should not feel like he had to make an identification[;] hairstyles, beards and mustaches can easily be changed and complexion colors could appear slightly different in photographs[; and Shipman should] take as much time as necessary to view the photographs. . . .

After reviewing the photo array, Shipman positively identified [Woods] as the person who shot [the Victim]. The identification was recorded both using audio and video recording.
. . .

Trial Court Opinion, 3/25/24, at 3-4 (paragraph break added).

The Commonwealth charged Woods with attempted homicide, aggravated assault, and carrying a firearm without a license.[3] Woods filed a motion to suppress, *inter alia*, Shipman's identification of him in the photo array. Woods argued the photo array was unduly suggestive and unreliable, where Shipman had described the shooter as having dread locks or a braid, but only one other person in the photo array had this distinctive hairstyle. The trial court conducted a hearing, at which Detective Canofari, as well as the detective who compiled the photo array, testified. The trial court denied suppression.

This matter proceeded to a jury trial, where Shipman, Yadav, and Detective Canofari testified as summarized above. Shipman again identified Woods, in court, as the person who fired a gun at his vehicle.

The Commonwealth called the Victim to testify. The trial court summarized:

During the investigation, [the Victim] provided a statement to Detective Canofari concerning the circumstances of the shooting. At trial, however, [the Victim] essentially answered every question posed to him with "I don't remember." It was clear, in [the trial] court's view, that [the Victim] did not want to

_____

[3] Woods was sixteen years old at the time of the incident. He filed a motion to transfer this matter to juvenile court, which the trial court denied.

- 4 -

testify and he did not respond truthfully to the questions posed to him by the [Commonwealth].

Trial Court Opinion, 3/25/24, at 2 (unnecessary capitalization omitted). The Commonwealth did not introduce the contents of the Victim's prior statement to the detective.

The Commonwealth also called Carswell to testify. The trial court stated:

In this court's view, she also did not want to testify. [Carswell] testified that she was with Shipman, [the Victim,] and Yadav and they went to her house to retrieve bathing suits. However, contrary to prior statements she made during the investigation of the shooting, she testified that she did not see [Woods] at all on the day of the shooting. . . .

*Id*. at 5 (unnecessary capitalization omitted). Carswell also denied having ever been "romantically involved with" Woods. N.T., 4/24/23, at 175.

Following the Commonwealth's case in chief, Woods made an oral motion for a judgment of acquittal on all charges. The trial court denied it.

Woods did not testify at trial.[4] The jury found him not guilty of attempted homicide and the firearms charge, but guilty of aggravated assault.

On July 25, 2023, the trial court imposed a sentence of eight to twenty years' imprisonment. Pertinently, the mother of Shipman, who owned the car he drove, testified over Woods' objection and gave a victim impact statement.

---

[4] Woods did present one witness: a prison employee, who provided a photograph of Woods upon subpoena. *See* N.T., 4/24/23, at 308-09.

Following sentencing, Woods' trial attorney filed a motion to withdraw from representation. The trial court granted it and appointed present counsel, Attorney Santoriella. She ultimately filed an amended post-sentence motion, arguing: the evidence establishing Woods' identity as the shooter was insufficient; the verdict was against the weight of the evidence; and the sentence was manifestly excessive. The trial court denied relief, and Woods filed a timely notice of appeal.[5]

_____

[5] We note the ten-day period to file a post-sentence motion ended on August 4, 2023. **See** Pa.R.Crim.P. 720(A)(1); **see also** Pa.R.Crim.P. 720(A)(3) (providing that if the defendant does not file a timely post-sentence motion, the notice of appeal shall be filed within [thirty] days of imposition of sentence).

The trial court appointed Attorney Santoriella two days before the ten-day post-sentence motion deadline. She entered her appearance and filed a "Post-Sentence Motion *Nunc Pro Tunc*" on August 8, 2024 — **after** the deadline. This motion requested additional time to review the record and leave to file an amended post-sentence motion. On August 10, 2023 — within thirty days of sentencing — the trial court entered an order, expressly permitting Woods to file an amended post-sentence motion. Attorney Santoriella then filed an amended post-sentence motion, within the new deadline imposed by the trial court. The trial court denied it on November 20, 2023, and Woods filed a notice of appeal on December 11, 2023.

Under these particular circumstances, we determine: the trial court's grant, of additional time to file a post-sentence motion, was proper; and Woods filed a timely post-sentence motion and notice of appeal. **See Commonwealth v. Dreves**, 839 A.2d 1122, 1128, 1129 (Pa. Super. 2003) (*en banc*) (stating that: (1) "under 42 Pa.C.S.A. § 5505, if no appeal had been taken, within [thirty] days after the imposition of sentence, the trial court has the discretion to grant a request to file a post-sentence motion *nunc pro tunc*;" (2) a court which "chooses to permit a defendant to file a post-sentence motion *nunc pro tunc* . . . must do so expressly;" and (2) when it does so, "the post-sentence motion filed as a result must be treated as though it were filed within the [ten]-day period following the imposition of sentence").

"Before we address the merits of this appeal, we must determine whether counsel has complied with the procedures provided in **Anders** and its progeny," including **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). **Commonwealth v. Dempster**, 187 A.3d 266, 270 (Pa. Super. 2018) (*en banc*). This Court has explained:

> Counsel who wishes to withdraw must file a petition to withdraw stating that he or she has made a conscientious examination of the record and determined that the appeal would be frivolous. Also, counsel must provide a copy of the **Anders** brief to the appellant and inform him of his right to proceed *pro se* or retain different counsel.
>
> The substance of the **Anders** brief must "(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous." [**Santiago**, 978 A.2d at 361.]

*Id*. at 270 (some citations omitted). If counsel's brief complies with the above requirements, this Court then conducts "a full examination" of the record "to decide whether the case is wholly frivolous." *Id*. at 271 (citation omitted). If we similarly conclude the appeal is frivolous, we may grant counsel's petition to withdraw and affirm the judgment of sentence. *See id*.

Here, in the **Anders** brief, Attorney Santoriella provides a procedural and factual history of the case with citations to the record, discusses the issues arguably supporting the appeal, and explains why she concluded the issues were frivolous. *See Anders* Brief at 6-12, 15-29. Attorney Santoriella

attaches a copy of a letter she mailed to Woods, which stated: she enclosed a copy of her petition to withdraw and **Anders** brief; she believed all issues were frivolous; and Woods has the right to proceed *pro se* or retain private counsel, and raise any additional points to this Court.  As Attorney Santoriella has substantially complied with the requirements of **Anders** and **Santiago**, we independently review the record to determine whether the appeal is frivolous.

In the **Anders** brief, Attorney Santoriella identifies the following issues for our review:

1. Whether the suppression court erred by denying the motion to suppress identification when the identification was unduly suggestive?

2. Whether the trial court erred in denying the judgment of acquittal raised at the close of the Commonwealth's case as there was insufficient evidence presented to the jury as to the identity of the shooter?

3. Whether the sentencing court erred at the sentencing hearing by allowing testimony to be introduced from an individual, Mary Shipman, who was not a victim nor a witness to the events?

4. Whether the sentencing court abused its discretion by failing to take into account [Woods'] individualized need for rehabilitation and imposed a sentence with an intense focus on the impact of the crime on the community to the exclusion of other factors?

**Anders** Brief at 8 (reordered for ease of disposition).

The first issue in the **Anders** brief is whether the trial court erred in denying Woods' motion to suppress Shipman's identification of him in the photo array.  We consider the applicable standard of review:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. . . .

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019) (citation omitted).

This Court has explained:

"Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances." "Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but 'suggestiveness alone does not warrant exclusion.'" Identification evidence will not be suppressed "unless the facts demonstrate that the identification procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics.

*Id*. at 986-87 (citations omitted).

On appeal, Attorney Santoriella summarizes Detective Canofari's testimony at the suppression hearing, as well as the instructions read to Shipman, and points out that Shipman viewed the photo array approximately two and one-half hours after the shooting. Attorney Santoriella suggests this issue is frivolous because there was no evidence to show suggestiveness on the police's part.

In denying the suppression motion, the trial court found "nothing about the identification that was unreliable or unduly suggestive." Trial Court Opinion, 3/25/24, at 6. It reviewed the photo array procedure:

Shipman was informed that there was no guarantee that a photograph of the person who committed the shooting was in the array. He was told he was not required to make an identification. The photographs were selected through a random compilation of photographs using a computer program designed to select photographs based on similar physical traits. With these safeguards in place, Shipman unequivocally selected a photograph of [Woods] from the array. . . .

*Id*.

After review of Woods' suppression motion and the suppression hearing transcript, we determine the record supports the trial court's denial of relief. *See Mbewe*, 203 A.3d at 986. We reiterate that: Detective Canofari did not know which photo was of Woods; he read the photo array instructs to Shipman as summarized; the detective; and Shipman observed the photo array and identified Woods within hours of the shooting. Thus, we conclude Woods' first claim is wholly frivolous.

In the second issue identified by Attorney Santoriella, Woods would challenge the sufficiency of the evidence identifying him as the shooter. We note the applicable standard of review:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact

finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Juray*, 275 A.3d 1037, 1042 (Pa. Super. 2022) (citations omitted).

We note a proper sufficiency claim "does not include an assessment of credibility of testimony offered by the Commonwealth. Instead, such arguments are more properly characterized as challenges to weight of evidence." *Id*. at 1043. With respect to a weight of the evidence claim:

> Appellate review . . . is a review of the exercise of [the trial court's discretion in denying relief on this claim], not of the underlying question of whether the verdict is against the weight of the evidence.
>
> In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court."

*Mbewe,* 203 A.3d at 988-89 (citations omitted).

Our Crimes Code defines aggravated assault, in pertinent part, as an attempt "to cause serious bodily injury to another, or caus[ing] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1).

Attorney Santoriella reasons the Commonwealth's following evidence established sufficiency: Shipman's identification of Woods in the photo array and at trial, as well as Shipman's testimony at trial; Yadav's testimony that when she exited Shipman's car at Carsell's house, Woods was there, he appeared agitated or annoyed, his hands were in his pockets and fidgeting,

and he and Carswell were previously in a romantic relationship; and Chief Dielman's trial testimony that Carswell provided Woods' name shortly after the shooting.

We reiterate that at trial, the trial court denied Woods' oral motion for a judgment of acquittal on all charges. In its opinion, the trial court explained its reasons for finding the evidence was sufficient to establish aggravated assault:

> Shipman positively identified [Woods] as the person who shot [the Victim]. Shipman personally observed [Woods] approach his vehicle holding a firearm that was pointed directly at his vehicle. He heard gunshots as [Woods] approached. [The Victim] was shot at this same time. Shipman provided direct evidence identifying [Woods] as the shooter.
>
> Additionally, Yadav testified that [Woods] was at the scene of the shooting and he was agitated that [the Victim] was there. She observed [Woods] "fidgeting" with something in the pocket of his hoodie seconds before the shooting. The identification evidence in this case proved beyond a reasonable doubt that [Woods] was the person who shot [the Victim].

Trial Court Opinion, 3/25/24, at 8 (paragraph break added).

After review of the trial record, we determine the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to establish Woods' identity as the shooter. *See Juray*, 275 A.3d at 1042. We incorporate the trial court's discussion above, and reiterate that Shipman identified Woods in a photo array hours after the shooting. The Commonwealth also presented all of the photos in the photo array, including

- 12 -

Woods' photo. *See* N.T., 4/24/23, at 244-45. Accordingly, any claim that there was no evidence, tending to show Woods was the shooter, is frivolous.

Relatedly, we would determine that a challenge to the weight of the evidence would also be frivolous.[6] The jury was free to weigh the evidence, including the trial testimony of Shipman, Yadav, and Detective Canofari, as well as the testimony of the Victim, who denied he knew of or remembered any of the underlying events. *See Juray*, 275 A.3d at 1042. We would determine the evidence was not so tenuous or vague that the verdict shocked the conscience of the court. *See Mbewe,* 203 A.3d at 988-89. Accordingly, any argument that the trial court erred in denying post-sentence relief on a weight of the evidence claim would also be frivolous.

The third issue in the *Anders* brief is whether the trial court erred in allowing Shipman's mother to give a victim impact statement at the sentencing hearing. We reiterate that at the hearing, Woods objected to Shipman's mother testimony and argued she was not a victim in this matter. *See* N.T., 7/25/23, at 3.

At this juncture, we note that in the *Anders* brief, Attorney Santoriella reasons that the trial court properly permitted her to testify under Section

_____

[6] Woods has preserved a weight of the evidence challenge, as he raised it in his amended post-sentence motion. *See* Pa.R.Crim.P. 607(A)(1)-(3) (requiring a claim that the verdict was against the weight of the evidence to be raised in a motion for a new trial: (1) orally, on the record, before sentencing; (2) by written motion before sentencing; or (3) in a post-sentence motion).

9738 of the Sentencing Code[7] (discussed *infra*). Meanwhile, the trial court found Shipman's mother was a victim as a member of the public "intimidated by the gun violence in our community," and she was "personally touched by gun violence[,] through her son." N.T., 7/25/23, at 58. The court did not refer to Section 9738, but in its opinion, reasoned that Shipman's mother was also a "victim" under Section 11.103 of the Crime Victims Act[8] (discussed *infra*). Trial Court Opinion, 3/25/24, at 9.

This Court has stated:

"The admissibility of evidence, including victim impact evidence, rests with the sound discretion of the trial court." The conduct of a sentencing hearing differs from the trial of the case. To determine an appropriate penalty, the sentencing court may consider any evidence it deems relevant. While due process applies, the sentencing court is neither bound by the same rules of evidence nor criminal procedure as it is in a criminal trial.

*Commonwealth v. King*, 182 A.3d 449, 455 (Pa. Super. 2018) (citations omitted).

In *Commonwealth v. Ali*, 149 A.3d 29 (Pa. 2016), the Pennsylvania Supreme Court determined Section 9738 of the Sentencing Code, as well as Section 11.103 of the Crime Victims Act, were not relevant to the question of who may provide a victim impact statement at sentencing. The Court first reviewed Section 9738(a):

---

[7] *See* 42 Pa.C.S.A. § 9738 ("Victim impact statements"); *see also* 42 Pa.C.S.A. §§ 9701-9799.42.

[8] *See* 18 P.S. § 11.103 ("Definitions"); *see also* 18 P.S. §§ 11.101-11.5102.

By way of background, Section 9738 appears in the Sentencing Code . . . and is titled "Victim impact statements." The provision acts to limit **the sequestration of crime victims at trial**, providing that victims cannot be ordered sequestered from trial merely because they may later make victim impact statements at sentencing[.[9]]

＊ ＊ ＊ ＊

. . . By its plain terms, **Section 9738 does not purport to address the admissibility of victim impact evidence**, but merely operates to protect certain crime victims from being sequestered at trial based on the possibility they may later offer victim impact evidence. . . .

*Id*. at 32-33, 37 (emphases added).

Furthermore, the Pennsylvania Supreme Court observed that Section 9738, as it existed in 2016, defined the term "victim," in pertinent part as follows: "As used in this section, the term 'victim' shall mean a 'victim' as defined in" Section 11.103 of the Crime Victims Act. *Id*. at 33 (*quoting* 42

---

[9] Section 9738(a) states:

Notwithstanding any other statute, rule or provision of law to the contrary, in the trial of a defendant accused of an offense . . . **a court shall not order the exclusion of any victim** of the offense **from the trial** on the basis that the victim may, during the sentencing phase of the proceedings:

(1) make a victim impact statement or present any victim impact information in relation to the sentence to be imposed on the defendant; or

(2) testify as to the effect of the offense on the victim or the family of the victim.

42 Pa.C.S.A. § 9738(a)(1)-(2) (emphases added).

- 15 -

Pa.C.S.A. § 9738(b), *subsequently amended* by Act 2018-145 (S.B. 897), § 2, *effective* October 24, 2018).  The Court considered:

> While [it may be] that no other provision of the Sentencing Code defines the term victim, it is notable that, in incorporating the [Crime Victims] Act's restrictive definition, Section 9738(b) does not suggest an intention to address the Sentencing Code as a whole.  To the contrary, the General Assembly specifically limited the incorporated definition to Section 9738, stating "**[a]s used in this section**," the term victim has the meaning ascribed to it in the [Crime Victims] Act . . . .

*Ali*, 149 A.3d at 37 (emphasis in original).

> Instead, the *Ali* Court reasoned:

> [W]here . . . the crime in fact is logically connected to a community impact suffered by specific individuals, Section 9721(b) [of the Sentencing Code] makes that impact or effect a relevant consideration at sentencing — whether the evidence is called "victim impact" or not, and regardless of whether the affected individuals would be deemed "victims" under the Crime Victims Act.

*Id*. at 38.

Section 9721(b), in turn, provides that in imposing sentence, a court shall consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."  42 Pa.C.S.A. § 9721(b).  The *Ali* Court further stated that a "sentencing court must take a measured approach to community and indirect victim effects depending upon the level of attenuation between the crime and the proffered impact."  *Ali*, 149 A.3d at 39.

Finally, we note that in 2018, after the *Ali* decision, the Pennsylvania legislature amended Section 9738(b), by removing the reference to Section 11.103's definition of a victim.[10]

In light of the foregoing authority, we disagree with the trial court's and Attorney Santoriella's reliance on, respectively, Section 11.103 of the Crime Victims Act and Section 9738 of the Sentencing Code. As the *Ali* Court stated, Section 9738 acts merely to prohibit the sequestering, *at trial*, of a victim on the basis that they may later provide a victim impact statement at sentencing. *See Ali*, 149 A.3d at 37. Section 9738 does not govern who may give a victim impact statement at sentencing. *See id*. Similarly, Section 9738's *prior* reference to the Crime Victims Act's definition of a victim is not relevant. *See id*. In any event, our legislature amended Section 9738 in 2018 to remove this reference to the Crime Victims Act. *See* 42 Pa.C.S.A. § 9738(b)(1).

Nevertheless, we conclude this issue is frivolous on other grounds. After review of the record, we determine the trial court did not abuse its discretion in admitting the testimony of Shipman's mother at sentencing. *See King*, 182 A.3d at 455. The trial court found Shipman's mother was a member of "[t]he community at large intimidated by the gun violence," and "has been

---

[10] The current version defines a victim, in part, to mean a victim as defined in Section 1106 of the Crimes Code (relating to restitution for injuries to person or property). *See* 42 Pa.C.S.A. § 9738(b)(1).

- 17 -

personally touched by gun violence through her son."[11]  N.T., 7/25/23, at 58.

On this basis, the court properly considered her testimony under Section

9721(b), which requires a court to review the protection of the public and the

impact on the community.[12]  **See** 42 Pa.C.S.A. § 9721(b); **see also Ali**, 149

A.3d at 38.  As this evidence was relevant to the trial court's sentencing

review, Woods' challenge to the admission of the evidence is frivolous.

The final issue in Attorney Santoriella's **Anders** brief is whether the trial

court abused its discretion in sentencing by failing to consider Woods'

individualized needs for rehabilitation, and by focusing on the impact of the

crime on the community to the exclusion of other factors.  Woods' argument

goes to the discretionary aspects of sentencing.

We first consider:

Before [this Court may] reach the merits of [a challenge to the
discretionary aspects of a sentence], we must engage in a four
part analysis to determine: (1) whether the appeal [was timely-
filed]; (2) whether [the a]ppellant preserved his issue; (3)
whether [the a]ppellant's brief includes a concise statement of the

_____

[11] At sentencing, the trial court instructed that Shipman's mother could testify about herself as a victim, but could not "speak for [her] son as a victim because he chose not to come" to the sentencing hearing.  N.T., 7/25/23, at 14.  Shipman's mother then stated it was painful to watch her son, then twenty-three years old, "change" and sink "into darkness," and she feared retaliation against her son for identifying Woods at trial.  **Id**. at 10, 14-15. Shipman's mother also stated she suffered a financial burden for the damage to her car, as she had to pay a deductible for auto insurance.  **See id**. at 15, 17.

[12] In its opinion, however, the trial court stated that Shipman's mother's "testimony was unpersuasive and did not factor into the sentence imposed." Trial Court Opinion, 3/25/24, at 9.

reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. White***, 193 A.3d 977, 982 (Pa. Super. 2018) (citation omitted). However, we note, where counsel files an ***Anders*** brief, a failure to include a Rule 2119(f) statement does not preclude our review of whether the defendant's issue is frivolous. ***See Commonwealth v. Zeigler***, 112 A.3d 656, 661 (Pa. Super. 2015).

With respect to a substantial question, this Court has stated:

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."

***White***, 193 A.3d at 982 (citations omitted). "This Court has . . . held that an excessive sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises a substantial question." ***Id***. at 983 (citations omitted).

Here, Woods filed a timely of appeal. He also preserved the present claims — that the trial court focused on the impact of the crime on the victim[13]

---

[13] We note Woods' amended post-sentence motion averred the trial court disproportionately focused on the impact of the crime on the ***victim***, while the ***Anders*** brief presents a claim that the court focused exclusively on the impact
*(Footnote Continued Next Page)*

to the exclusion of other sentencing factors, including his rehabilitative needs — by raising them in a post-sentence motion. Attorney Santoriella's **Anders** brief does not include a Rule 2119(f) statement. However, this does not preclude our review of whether Woods' issue is frivolous. **See Zeigler**, 112 A.3d at 661. Finally, we note Woods' amended post-sentence motion also argued the sentence was unreasonable and manifestly excessive. This claim, in conjunction with his above claim, raises a substantial question. **See White**, 193 A.3d at 982. As Woods has fulfilled each of the prerequisites for review, we consider his sentencing claim.

In reviewing a challenge to the discretionary aspects of sentencing, we note:

> [S]entencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

**Id**. at 984 (citation omitted). Where the sentencing court has the benefit of a pre-sentence investigation ("PSI") report, we presume the court to have considered all relevant information. **Id**.

---

of the crime on the **community**. **See** Amended Post-Sentence Motion, 10/9/23, at 2 (unnumbered); **see also Anders** Brief at 20. Nevertheless, the trial court found, at sentencing, that Shipman's mother was a victim **and** a member of the community affected by gun violence. **See** N.T., 7/25/23, at 58.

- 20 -

Attorney Santoriella suggests this issue is frivolous, where the trial court did consider "everything that was presented at the sentencing hearing" and made extensive findings. **Anders** Brief at 20. Attorney Santoriella also points out the trial "court accepted and rejected different arguments" from both parties. **Id**. at 21.

Woods turned twenty-two years old the day before the sentencing hearing. As stated above, the trial court imposed a sentence of eight to twenty years' imprisonment for his conviction of aggravated assault, a felony of the first degree. In denying relief on his excessive sentence claim, the court reasoned:

> [T]his court was guided by the contents of the [PSI] and the sentence imposed . . . was within the standard range of the sentencing guidelines. This court also considered [Woods'] prior criminal history and conduct. [He] had a significant history involving the illegal possession or use of firearms. [Woods'] past involvement in the criminal justice system and the juvenile justice system did not deter him from engaging in the unlawful conduct in this case and the record is clear that the past criminal sentences have had no effect on [his] desire to continue committing crimes. The court also considered the effect [of Woods'] actions . . . on society. [His] illegal possession and use of firearms create[d] a continued serious risk of extreme danger to society as well as a risk of danger to . . . himself. For these reasons, the court was persuaded that the sentence imposed was appropriate.

Trial Court Opinion, 7/25/23, at 12 (unnecessary capitalization omitted).

After review of the record, we determine the trial court did not abuse is discretion. **See White**, 193 A.3d at 984. The court reviewed the PSI and indeed referred to the PSI at the sentencing hearing. **See id**. Woods had a

prior record score of four, and the standard sentencing guidelines range was six and one-half to eight years.

Contrary to Woods' claim, the trial court did consider the sentencing factors, and the relevant arguments presented by both parties. Woods committed the underlying shooting in July 2018. The Commonwealth averred that Woods was in prison between 2018 and 2020, and in 2021, the Commonwealth filed new charges of attempted homicide, aggravated assault, and firearms offenses. *See* N.T., 7/25/23, at 20. "When . . . Woods was arrested, he was charged with additional firearms crimes," to which he has since pleaded guilty before the same trial judge. *Id*. The Commonwealth also reviewed Woods' juvenile history: a 2016 adjudication of delinquency for defiant trespass; and a 2017 adjudication for robbery, firearms not to be carried without a license, and recklessly endangering another person. Finally, the Commonwealth asserted that Woods had thirteen misconduct reports in prison, related to fighting, theft, disobeying a correction officer's orders, and smoking. Three days before the sentencing hearing, the Commonwealth charged him with possessing contraband — cannabinoid, Xylazine, and fentanyl — in prison. The Commonwealth requested a sentence of ten to twenty year's imprisonment.

The trial court observed that Woods was born addicted to heroin. *See id*. at 42. Woods argued that previously, he successfully completed treatment at the Loysville Youth Detention Center, and then went to Glen Mills School,

where no negative reports arose. Woods also cited "the untimely deaths of his father[, by homicide,] and half-brother." *Id*. at 43. Defense counsel requested "a standard to lower guideline sentence in accordance with his age and the opportunities that [he has] been given." *Id*. at 51.

The trial court found the prison misconduct reports, related to fighting, possessing drugs, and smoking, were not probative. *See* N.T., 7/25/23, at 26. However, the trial court emphasized Woods' persistent history of "gun incidents," beginning with an allegation that he possessed a gun when he was twelve years old, and "[e]ven after this case arose, . . . other cases involving a firearm." *Id*. at 52, 55. The court found that the community, as well as Woods himself, was endangered by gun violence: "[We are] losing too many of our young men in this community because of guns." *Id*. at 52. The trial court acknowledged that its minimum sentence, of eight years, was at "the top of the standard range," and the maximum sentence, of twenty years, was the statutory maximum. *Id*. at 56.

In light of the foregoing discussion, we reject Woods' claim that the trial court focused solely on one sentencing factor — the impact of his crime on the community — while failing to consider all other factors. Instead, the court properly considered Woods' rehabilitative needs, the protection of the public, and the impact of the offense on the victims' lives and on the community. *See* 42 Pa.C.S.A. § 9721(b). Thus, we conclude this sentencing issue is frivolous.

Additionally, our independent review of the record discloses no non-frivolous issue that counsel may have missed. ***See Dempster***, 187 A.3d at 271. Therefore, we grant Attorney Santoriella's petition to withdraw and affirm Woods' judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/29/2025